PEOPLE v MAYNOR

Docket No. 244435. Submitted February 12, 2003, at Detroit. Decided April
     8, 2003, at 9:15 A.M. Leave to appeal granted, 468 Mich 943.

     Tarajee S. Maynor was bound over by the district court for trial in the
     Oakland Circuit Court on two counts of involuntary manslaughter
     regarding the deaths of her two children, rather than on the two
     counts of first-degree felony murder sought by the prosecution.
     The district court concluded that first-degree child abuse, MCL
     750.136b(2), the underlying felony, is a specific-intent crime, and
     that there was not probable cause to believe that the defendant
     acted with the requisite intent when the defendant left her children
     alone in a hot car where they died due to heat exposure. The pros-
     ecution moved to reinstate the felony-murder charges in the circuit
     court, Wendy L. Potts, J. The circuit court reinstated the charges,
     concluding that first-degree child abuse is a general-intent crime,
     and that there was probable cause to believe the defendant com-
     mitted first-degree child abuse, as well as second-degree murder.
     The defendant appealed by leave granted.

     The Court of Appeals *held*:

     1. The circuit court erred as a matter of law in concluding that
     first-degree child abuse is a general-intent crime. A crime that is
     required to be committed "knowingly" is a specific-intent crime.
     The statute governing first-degree child abuse, MCL 750.136b(2),
     provides that a person is guilty of first-degree child abuse if the
     person knowingly or intentionally causes serious physical harm or
     serious mental harm to a child.

     2. Felony murder, MCL 750.316, is essentially second-degree mur-
     der elevated by one of the felonies enumerated in MCL 750.316.
     First-degree child abuse is a felony enumerated in MCL 750.316.
     The circuit court correctly ruled that the defendant could be
     charged with felony murder because there was evidence to support
     a finding of probable cause regarding charges of second-degree
     murder and first-degree child abuse. Thus, the order of the circuit
     court reinstating the charges of first-degree felony murder must be
     affirmed because the circuit court reached the right result, albeit
     for the wrong reason.

     Affirmed.

WHITBECK, C.J., concurring, stated that while he agrees with the majority's conclusion that if first-degree child abuse, MCL 750.136b(2), is a specific-intent crime there was sufficient circumstantial evidence from which a jury could infer the requisite intent for that crime, he believes, after review of conflicting case law and the legislative development of the child-abuse statute, that first-degree child abuse is a general-intent crime, and the circuit court's order should be affirmed on that basis.

CRIMINAL LAW — FIRST-DEGREE CHILD ABUSE — SPECIFIC INTENT.
  First-degree child abuse is a specific-intent crime (MCL 750.136b[2]).

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, *David G. Gorcyca,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *Anica Letica,* Assistant Prosecuting Attorney, for the people.

*Hatchett, Dewalt & Hatchett* (by *Elbert L. Hatchett*) for the defendant.

Before: WHITBECK, C.J., and GRIFFIN and OWENS, JJ.

OWENS, J. Defendant Tarajee S. Maynor appeals by leave granted the circuit court's order granting the prosecution's motion to reinstate the charges, consisting of two counts of first-degree felony murder, MCL 750.316(1)(b), with the underlying felony being first-degree child abuse, MCL 750.136b(2). We affirm.

On June 28, 2002, defendant left her ten-month-old daughter and three-year-old son alone in a hot car for approximately 3½ hours. When defendant returned to the car, she found both children dead in the back seat. The medical examiner determined that the cause of death was hyperthermia, or heat exposure, from being left in the hot car. The prosecution sought to bind defendant over on two counts of first-degree felony murder, with first-degree child abuse as the underlying felony. The district court ruled that first-

degree child abuse was a specific-intent crime, and found that there was not probable cause to believe that defendant acted with the requisite intent. The district court further concluded that there was only probable cause for involuntary manslaughter. Accordingly, the district court bound defendant over on two counts of involuntary manslaughter.

The prosecution moved in the circuit court for reinstatement of the felony-murder charges. The circuit court granted the prosecutor's motion, holding that first-degree child abuse is a general-intent crime. The circuit court also found that there was probable cause to believe defendant had committed this offense, as well as second-degree murder. Thus, the court reinstated the felony-murder charges.

On appeal, defendant contends that the circuit court erred in ruling that first-degree child abuse is a general-intent crime. Ordinarily, the decision of the district court on a motion to bind over is reviewed for an abuse of discretion. *People v Stone*, 463 Mich 558, 561; 621 NW2d 702 (2001). However, we review this issue de novo because it involves a question of statutory interpretation. *Id.*

The first-degree child abuse statute, MCL 750.136b(2), provides as follows: "A person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." Generally, a specific-intent crime requires a criminal intent beyond the act done, whereas a general-intent crime requires only the intent to perform the proscribed physical act. *People v Whitney*, 228 Mich App 230, 254; 578 NW2d 329 (1998).

In *People v Gould*, 225 Mich App 79, 86; 570 NW2d 140 (1997), we opined that first-degree child abuse was a specific-intent crime. However, in denying leave, our Supreme Court observed that our ruling "that first-degree child abuse is a specific-intent crime is dictum, in light of the panel's conclusion that, even under that standard, the circuit court did not err in denying the defendant's motion for directed verdict." *People v Gould*, 489 Mich 955 (1999). Accordingly, the *Gould* construction of the statute governing first-degree child abuse is not binding precedent. *People v Borchard-Ruhland*, 460 Mich 278, 286; 597 NW2d 1 (1999).

Nevertheless, we believe that our analysis in *Gould* was sound. In fact, we adopt the following portion of the *Gould* analysis as our own:

> The word "knowingly" is not defined in the statute. Unless defined in the statute, every word of the statute should be accorded its plain and ordinary meaning. MCL 8.3a; MSA 2.212(1); *People v Gregg*, 206 Mich App 208, 211; 520 NW2d 690 (1994). If a statute does not expressly define its terms, a court may consult dictionary definitions. *Id.*, pp 211-212.
>
> Black's Law Dictionary (6th ed) defines "knowingly" as: "With knowledge; consciously; intelligently; willfully; *intentionally*" (emphasis supplied). Given the dictionary definition of the word "knowingly" and applying the plain and ordinary meaning of the word to the language of the statute, we conclude that "knowingly" as contained in the statute means the same thing as the word "intentionally." According to the dictionary definition, the words "knowingly" and "intentionally" are synonymous. [*Gould, supra*, 225 Mich App 84.]

We further note that, although Black's Law Dictionary (7th ed) does not define "knowingly," it does define

"knowing" as "[h]aving · or showing awareness or understanding; well-informed . . . deliberate; conscious." Similarly, Random House Webster's College Dictionary (2001) defines "knowing" in pertinent part as "conscious," "intentional," and "deliberate."

In support of its conclusion, the *Gould* panel also opined "that this Court has repeatedly concluded that a crime that is required to be committed 'knowingly' is a specific intent crime." *Gould, supra* at 85. We recently recognized that " '[w]ords typically found in specific intent statutes include "knowingly," "willfully," "purposely," and "intentionally." ' " *People v Disimone*, 251 Mich App 605, 611; 650 NW2d 436 (2002), quoting *People v Davenport*, 230 Mich App 577, 579-580; 583 NW2d 919 (1998).

Moreover, we note that second-degree child abuse occurs if a person "knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results." MCL 750.136b(3)(b). Comparing first-degree child abuse with second-degree child abuse, it appears that our Legislature contemplated the situation where a person intended an act, but perhaps not the consequences of the act. Thus, second-degree child abuse is an example of a general-intent crime. *Whitney, supra* at 254. We must presume that our Legislature's decision not to include the "commits an act" language in the first-degree child abuse provision was intentional. *People v Rahilly*, 247 Mich App 108, 112; 635 NW2d 227 (2001), quoting *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). Given the dictionary definitions described above, as well as our Legislature's deliberate use of different phrases when defining first- and second-degree child

abuse, we conclude that first-degree child abuse is a specific-intent crime. Therefore, the circuit court erred in ruling, as a matter of law, that first-degree child abuse is a general-intent crime.

However, we need not reverse the circuit court's reinstatement of the original charges if the circuit court correctly ruled that defendant could be charged with felony murder. Indeed, we may affirm where the court reaches the right result, albeit for the wrong reason. *People v Jory*, 443 Mich 403, 425; 505 NW2d 228 (1993).

Generally, a magistrate must bind a defendant over for trial if, at the conclusion of the preliminary examination, "there is probable cause to believe that a felony has been committed and that defendant committed it." *People v Carter*, 250 Mich App 510, 521; 655 NW2d 236 (2002). MCL 766.13. "Probable cause exists when there is a reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a cautious person to believe that the accused is guilty of the offense charged." *Carter, supra* at 521.

As noted above, defendant was charged with felony murder, MCL 750.316. We have defined felony murder as follows:

> (1) the killing of a human being; (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316 . . . . [*People v Hutner*, 209 Mich App 280, 282-283; 530 NW2d 174 (1995).]

In other words, felony murder is essentially second-degree murder, elevated by one of the felonies enu-

merated in MCL 750.316. See *People v Magyar*, 250
Mich App 408, 412; 648 NW2d 215 (2002). First-degree
child abuse is one of the felonies enumerated in MCL
750.316(1)(b).

The elements of second-degree murder are: "(1) a
death, (2) caused by an act of the defendant, (3) with
malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868
(1998). "Malice is defined as the intent to kill, the
intent to cause great bodily harm, or the intent to do
an act in wanton and wilful disregard of the likeli-
hood that the natural tendency of such behavior is to
cause death or great bodily harm." *Id.* at 464. Here,
there is no dispute that defendant caused the tragic
death of her children. *Goecke, supra* at 463. In addi-
tion, there was no evidence indicating a justification
or excuse for the killing. *Id.* As noted, malice includes
"the intent to do an act in wanton and wilful disre-
gard of the likelihood that the natural tendency of
such behavior is to cause death or great bodily harm."
*Id.* at 464. Among the evidence introduced during the
preliminary examination was defendant's admission
that she left her children unattended in a hot car for
approximately 3½ hours. Her act of leaving the chil-
dren unattended was intentional, rather than acciden-
tal.[1] Accordingly, there was sufficient evidence that
defendant's conduct fell within the definition of mal-
ice. *Id.* Consequently, we conclude that there was
ample evidence to support a finding of probable
cause for second-degree murder.[2] *Carter, supra* at
521.

---

[1] Second-degree murder is a general-intent crime. *Goecke, supra* at 464.

[2] Thus, for the same reasons, we conclude that the district court
abused its discretion in finding that the evidence only supported involun-

Next, we must determine whether the prosecution presented sufficient evidence during the preliminary examination to support a finding of probable cause for first-degree child abuse. Having already concluded that the crime requires specific intent, the primary question is whether defendant specifically intended to seriously harm her children, MCL 750.136b(2). "Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to support a bindover." *People v Terry*, 224 Mich App 447, 451; 569 NW2d 641 (1997). Moreover, if "there is credible evidence both to support and to negate the existence of an element of the crime, a factual question exists that should be left to the jury." *Id.*

Here, although defendant stated that she did not intend for the children to die, her self-serving statement obviously does not end the inquiry. Again, the evidence indicated that defendant left her children in a hot car for approximately 3½ hours. In fact, regardless of the weather, leaving the children unattended in a car for such a long time raises considerable doubt with respect to whether she was merely negligent. Furthermore, defendant did not check on her children, although the evidence indicated that she left the salon to get herself something to eat and drink. In addition, although defendant's statement suggested that she might not have known that the children were at risk, it is worth noting that the evidence also suggested that she rolled down at least one of the car windows about an inch and a half. These acts belie

---

tary manslaughter. *Stone, supra* at 561. At the very least, there was probable cause to support charges of second-degree murder.

her claim of ignorance of the risks.[3] Accordingly, there was sufficient circumstantial evidence from which a jury could infer the requisite intent for first-degree child abuse.[4] *Carter, supra* at 521. Consequently, we conclude that the circuit court did not err in reinstating the felony-murder charges. *Jory, supra* at 425.

Affirmed.

GRIFFIN, J., concurred.

WHITBECK, C.J. (*concurring*). I agree with the majority's conclusion that, assuming first-degree child abuse is a specific-intent crime, there was sufficient circumstantial evidence from which a jury could infer the requisite intent for that crime. I do not agree, however, with the majority's conclusion that first-degree child abuse is a specific-intent crime. Rather, I believe the trial court was correct in its conclusion that first-degree child abuse is a general-intent crime, and I would affirm on that basis.

---

[3] It is questionable whether her claim of ignorance is even sufficient to defeat the rather obvious fact that hot weather makes cars very hot. The prosecution compellingly argued below that people know not to leave milk in their cars on hot days. Indeed, every new driver quickly learns that, on hot days, the temperatures inside a car will exceed the outside temperature in a relatively short period. In other words, it does not require a scientific background to know that cars get very hot on summer days. Nor is extensive medical knowledge required to realize that such temperatures are harmful to people, especially children. Thus, we believe a jury should appraise the veracity of defendant's statements regarding her knowledge of the risks, or lack thereof.

[4] At the very least, the issue of defendant's intent should be left to a jury. *Terry, supra* at 451.

I. THE REASONING IN *GOULD*, *SHERMAN-HUFFMAN*, AND *LERMA*

The first-degree child abuse statute provides that "[a] person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child."[1] In interpreting a statute, we must examine its specific language,[2] presume that every word has meaning, and avoid any construction that would render a statute or any part of it surplusage or nugatory.[3]

The majority cites with approval this Court's opinion in *People v Gould*.[4] There, this Court held that first-degree child abuse was a specific-intent crime.[5] As the majority notes, the *Gould* panel explained its reasoning as follows:

> Black's Law Dictionary (6th ed) defines "knowingly" as: "With knowledge; consciously; intelligently, willfully; *intentionally*" (emphasis supplied). Given the dictionary definition of the word "knowingly" and applying the plain and ordinary meaning of the word to the language of the statute, we conclude that "knowingly" as contained in the statute means the same thing as the word "intentionally." According to the dictionary definition, the words "knowingly" and "intentionally" are synonymous. Thus, we conclude that a specific intent is required under the first-degree child abuse statute. In other words, in order to convict a defendant of first-degree child abuse, it must be shown that

---

[1] MCL 750.136b(2).

[2] *People v Pitts*, 216 Mich App 229, 232; 548 NW2d 688 (1996).

[3] *People v Borchard-Ruhland*, 460 Mich 278, 285; 597 NW2d 1 (1999).

[4] *People v Gould*, 225 Mich App 79, 86; 570 NW2d 140 (1997). The majority also notes, correctly, that the Supreme Court classified this Court's conclusion in *Gould* as dictum. See *People v Gould*, 459 Mich 955 (1999).

[5] *Gould, supra* at 84-85.

the defendant intended to harm the child, not merely that the defendant engaged in conduct that caused harm.[6]

The problem with this analysis, apart from its questionable conflation of the disjoined terms "knowingly" and "intentionally," is its assertion that the appearance of the word "intentionally," or its arguable synonym "knowingly," unambiguously indicates the Legislature's intent to make first-degree child abuse a specific-intent crime. Although this conclusion may be intuitively appealing, a closer look at this Court's varying methods for determining the requisite intent under a given statute reveals that the answer is not so simple. While the *Gould* panel's approach is not entirely unsupported, a diverging line of cases, which I will explore in some depth, holds that the mere presence of certain words is not dispositive in making this determination.

I suggest, therefore, that the dictum in *Gould* is not persuasive. My view on this is somewhat strengthened by subsequent jurisprudential history. This Court in *People v Sherman-Huffman*[7] relied on *Gould* and held that, because the language of the statute governing first-degree child abuse was nearly identical to the language of the statute governing third-degree child abuse, third-degree child abuse was a specific-intent crime. The Supreme Court held that, regardless of whether third-degree child abuse is a specific- or general-intent crime, there was sufficient evidence to convict the defendant of third-degree child abuse.[8]

---

[6] *Id.*

[7] *People v Sherman-Huffman*, 241 Mich App 264, 266; 615 NW2d 776 (2000).

[8] *People v Sherman-Huffman*, 466 Mich 39, 40; 642 NW2d 339 (2002).

However, the Supreme Court also commented that this Court's finding that third-degree child abuse was a specific-intent crime was dictum.[9] Suffice it to say, if the dictum in *Gould* is unpersuasive, then the dictum in *Sherman-Huffman* is equally unpersuasive. Further, as dictum, the language of these two opinions regarding the nature of first-degree child abuse is not binding precedent.[10]

Similarly, albeit for different reasons, this Court's holding in *People v Lerma*,[11] on which the *Gould* panel relied to a considerable extent, is, in my view, also unpersuasive. That case involved a defendant who argued that his intoxication was a valid defense to his conviction under the "joyriding" statute.[12] That statute made it a crime for any person to "willfully and without authority" take possession of, and drive away, a motor vehicle belonging to another.[13] The *Lerma* panel defined the issue as whether the word "willfully" in the statute denotes a specific intent as a necessary element of the crime.[14] The *Lerma* panel observed that, at the time, there was precious little guidance in Michigan case law regarding the meaning of the term "specific intent."[15] The panel then looked to the language of "several mental states" in "various proposed criminal codes" to suggest that

> specific intent crimes would be limited only to those crimes which are required to be committed either "purposefully" or

---

[9] *Id.* at 40 n 2.

[10] *Borchard-Ruhland, supra* at 286 n 4.

[11] *People v Lerma*, 66 Mich App 566; 239 NW2d 424 (1976).

[12] MCL 750.413.

[13] *Id.*

[14] *Lerma, supra* at 568.

[15] *Id.* at 569.

"knowingly," while general intent crimes would encompass those crimes which can be committed either "recklessly" or "negligently." Thus, in order to commit a specific intent crime, an offender would have to subjectively desire or know that the prohibited result will occur, whereas in a general intent crime, the prohibited result need only be reasonably expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such a result.[16]

Using this approach, the *Lerma* panel then found that the term "willfully" fell within its definition of a specific-intent crime.[17] First, and most specifically, I note that the *Lerma* decision is, under MCR 7.215(I)(1), not binding precedent. Second, and more generally, the Delphic reference to mental states set out in "various proposed criminal codes" presumably includes the Model Penal Code, which, apart from the fact that it has not been adopted in Michigan, actually takes the view that the term "knowingly" indicates what would have been a *general*-intent crime at common law.[18] Third, and quite broadly, the *Lerma* panel's suggestion that the words "purposefully" and "knowingly" are, respectively, antonyms for the words "recklessly" and "negligently" is such an opaque dichotomy as to prevent meaningful analysis.

Thus, in my view, neither *Gould*, nor *Sherman-Huffman*, nor *Lerma* requires a finding that first-degree child abuse is a specific-intent crime. If this is

---

[16] *Id.* at 569-570.

[17] *Id.* at 570.

[18] See *United States v Bailey*, 444 US 394, 405; 100 S Ct 624; 62 L Ed 2d 575 (1980), citing Model Penal Code § 2.02, Comments, p 125 (Tent. Draft No. 4, 1955); LaFave & Scott, Handbook on Criminal Law § 28, pp 201-202 (1972) ("In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent").

so, we must consider anew the meaning of the words "knowingly" and "intentionally." The majority turns to dictionary definitions. I would turn, at least initially, to relevant case law, as sparse as it might be.

## II. GENERAL INTENT VERSUS SPECIFIC INTENT

### A. OVERVIEW

Specific intent is defined as a particular criminal intent beyond the act done, whereas general intent is merely the intent to perform the physical act itself.[19] As succinctly stated in *People v Herndon*: "A statute that requires a prosecutor to prove that the defendant intended to perform the criminal act creates a general intent crime. A statute that requires proof that the defendant had a 'particular criminal intent beyond the act done' creates a specific intent crime."[20]

### B. THE SPECIFIC-INTENT CASES

As then Judge, now Justice, Markman pointed out in *People v Perez-DeLeon*,[21] this Court has vacillated regarding the issue whether the existence of knowledge as an element makes a crime one of specific rather than general intent. There is a line of cases that refers to certain touchstone words, such as "purposefully," "knowingly," "willfully," "purposely," and "intentionally," to signal that the offense is a specific-intent crime. In *People v American Medical Centers*

---

[19] *People v Lardie*, 452 Mich 231, 240; 551 NW2d 656 (1996).

[20] *People v Herndon*, 246 Mich App 371, 385; 633 NW2d 376 (2001).

[21] *People v Perez-DeLeon*, 224 Mich App 43, 55; 568 NW2d 324 (1997).

*of Michigan, Ltd,*[22] the defendants were charged with Medicaid fraud. The elements of the offense are that a person makes a claim to an employee of the state under the Social Welfare Act[23] knowing the claim to be false, fictitious, or fraudulent.[24] Then Judge, now Justice, Kelly, citing *Lerma,* stated that when a statute requires that the criminal act be committed either "purposefully" or "knowingly," the crime is a specific-intent crime.[25]

Similarly, in *People v Ainsworth,*[26] this Court held that the offense of stealing or retaining a financial-transaction device (more commonly known as a credit card) constitutes a specific-intent crime, given that knowledge is an essential part of the crime, because the statute[27] requires that a person "knowingly" commit the offense.[28] Thus, under this line of cases, the *presence* of certain touchstone words in a statute signals the Legislature's intent that the crime is a specific-intent crime.

There are also cases that address the issue from the opposite direction, although using the same touchstone words. In *People v Davenport,*[29] this Court interpreted the carjacking statute[30] and found that the crime of carjacking was not a specific-intent crime. Citing *American Medical Centers* and *People v Nor-*

---

[22] *People v American Medical Centers of Michigan, Ltd,* 118 Mich App 135; 324 NW2d 782 (1982).

[23] MCL 400.1 *et seq.*

[24] MCL 400.607.

[25] *American Medical Centers, supra* at 153.

[26] *People v Ainsworth,* 197 Mich App 321; 495 NW2d 177 (1992).

[27] MCL 750.157n(1).

[28] *Ainsworth, supra* at 325.

[29] *People v Davenport,* 230 Mich App 577; 583 NW2d 919 (1998).

[30] MCL 750.529a(1).

*man*,[31] the *Davenport* panel stated, "[w]ords typically found in specific intent statutes include 'knowingly,' 'willfully,' 'purposely,' and 'intentionally.'" The panel then observed that these words were absent from the carjacking statute and therefore found that carjacking was not a specific-intent crime.[32]

Similarly, this Court in *People v Disimone*,[33] cited here by the majority, used the same approach in interpreting the statute that makes it a crime to offer to vote or attempt to vote more than once in the same election, either in the same or another voting precinct.[34] The *Disimone* panel, citing *Davenport*, noted that "the Legislature refrained from using the words 'knowingly,' 'willfully,' 'purposefully' or 'intentionally' in reference to the phrase 'offer to vote,' words typically found in specific intent statutes."[35] The *Disimone* panel concluded that in proving that the defendant made an "offer to vote," the prosecutor was not required to establish that the defendant had a specific criminal intent. Thus, under this line of cases, the *absence* of the same touchstone words in a statute signals the Legislature's intent that the crime is a general-intent crime.

### C. THE GENERAL-INTENT CASES

There is, however, another line of cases, some of which do not rely on the presence or absence of the touchstone words to signal legislative intent. In *Peo-*

---

[31] *People v Norman*, 176 Mich App 271, 275; 438 NW2d 895 (1989).

[32] *Davenport, supra* at 580.

[33] *People v Disimone*, 251 Mich App 605; 650 NW2d 436 (2002).

[34] MCL 168.932a(e).

[35] *Disimone, supra* at 612.

*ple v Lane*,[36] the question was whether the offense of carrying a concealed weapon (CCW) is a specific-intent crime; the defendant argued intoxication as defense and the prosecutor argued, and the trial court agreed, that intoxication is a defense only to a specific-intent crime.[37] The *Lane* panel first noted that the statute itself makes no reference to specific intent; indeed, the statute uses none of the touchstone words.[38] The panel then stated that, while the judiciary has read into the statute an element of knowledge,

> this element of knowledge is [not] the same as a specific intent. It rather reflects the general criminal intent necessary in most crimes. The statute itself does not make any sort of intent necessary for conviction. *The purpose of the element of knowledge is to limit the statute's application to knowing, rather than innocent, violations of the statute's provisions.* . . . Because intoxication is not a defense to the sort of general criminal intent which the knowledge element of the CCW statute reflects, we find no error in the trial court's refusal to allow testimony on the issue of intoxication.[39]

It is fair to conclude, I believe, that had the CCW statute used the touchstone word "knowingly," the *Lane* panel would have reached the same result, for clearly it found that the judicially imposed "knowledge element" was insufficient to convert the crime to a specific-intent crime. Similarly, in *People v Karst*,[40] the Court found that the "knowledge ele-

---

[36] *People v Lane*, 102 Mich App 11; 300 NW2d 717 (1980).

[37] *Id.* at 14.

[38] *Id.* at 14 n 1.

[39] *Id.* at 14-15 (emphasis added).

[40] *People v Karst*, 138 Mich App 413; 360 NW2d 206 (1984).

ment" is only a general-intent, not a specific-intent, requirement.[41]

Other general-intent cases, however, do refer to some of the touchstone words. In *People v Henry*,[42] for example, this Court construed the statute[43] making the discharge of a firearm in an occupied structure a crime. As in *Lane*, the defendant asserted intoxication as a defense, but the trial court ruled that the crime in question was a general-intent crime and, therefore, that intoxication was not a defense.[44] However, unlike *Lane*, the discharge-of-firearm statute specifically included the word "intentionally."[45] The *Henry* panel noted that, in *Davenport*, this Court stated that the use of the word "intentionally" is one of those typically included in specific-intent statutes.[46] The panel went on to say:

> However, we do not believe the use of the word "intentionally" in [the discharge-of-firearm statute] indicates that the Legislature intended the offense to require a specific intent. Rather, the use of the word "intentionally" in [the discharge-of-firearm statute] was intended to prevent an innocent or accidental discharge of a firearm in an occupied structure from constituting a crime.[47]

Accordingly, the *Henry* panel held that

> because the statute does not require proof of the intent to cause a particular result or the intent that a specific consequence occur as a result of the performance of the prohib-

---

[41] *Id.* at 416.

[42] *People v Henry*, 239 Mich App 140; 607 NW2d 767 (1999).

[43] MCL 750.234b(2).

[44] *Henry, supra* at 143.

[45] *Id.*

[46] *Id.* at 144-145.

[47] *Id.* at 145.

ited act, but only requires proof that defendant intentionally discharged the firearm, the trial court correctly concluded that the crime of discharge of a firearm in an occupied structure is a general intent crime.[48]

### D. SUMMARY

It is fair to say, I believe, that then Judge, now Justice, Markman's statement that this Court has "vacillated" on how to define general-intent and specific-intent crimes is something of an understatement. Put more bluntly, this Court appears to be marching in two different directions on the issue. We have said that the use of the word "knowingly" signals a specific-intent crime, see *American Medical Centers*. However, we have also said that the "knowledge element" is insufficient to convert a crime to a specific-intent crime, see *Lane* and *Karst*. We have said, or implied, that the word "intentionally" signals a specific-intent crime, see *American Medical Centers*, *Davenport*, and *Disimone*. However, we have also said that the word "intentionally" does *not* signal a specific-intent crime, see *Henry*.

I conclude that, as is occasionally the case in the law, the published opinions of this Court provide two different approaches, or "ladders" of reasoning in Karl Llewellyn's felicitous phrase,[49] to dealing with this issue. Under one approach, the presence or absence of certain touchstone words will determine the out-

---

[48] *Id.* The *Henry* panel also cited 21 Am Jur 2d, Criminal Law, § 130, p 215, which states that, "[i]n the absence of qualifying provisions, the terms 'intent' and 'intentional' in a criminal statute refer to general criminal intent."

[49] See Llewellyn, *The Bramble Bush: On Our Law And Its Study* (New York: Oceana Publications) (1960), p 72.

come. Under the opposite approach, the presence or absence of these words alone will not decide the matter. The majority here adopts the first approach; I would adopt the second. Moreover, I reluctantly conclude that the words of the statute governing first-degree child abuse—specifically, the words "knowingly" and "intentionally"—do not, alone, give us sufficient guidance to ascertain the intent of the Legislature. Therefore, I believe that we must turn to certain canons relating to the interpretation of statutes.

### III. THE HISTORY OF THE CHILD-ABUSE STATUTE

#### A. CHILD CRUELTY AND CHILD TORTURE

The original statutory provisions relating to child abuse were contained in 1931 PA 328. Section 136 of that act provided:

> Any parent or guardian or person under whose protection any child may be, who tortures, cruelly or unlawfully punishes, or *wilfully*, unlawfully or negligently deprives of necessary food, clothing or shelter, or who *wilfully* abandons a child under sixteen years of age, or who habitually causes or permits the health of such child to be injured, his or her life endangered by exposure, want or other injury to his or her person, or cause or permits him or her to engage in any occupation that will be likely to endanger his or her health, or deprave his or her morals or who habitually permits him or her to frequent public places for the purpose of begging or receiving alms, or to frequent the company of or consort with reputed thieves or prostitutes, or by vicious training depraves the morals of such child, shall, upon conviction, be deemed guilty of a felony.[50]

---

[50] MCL 750.136 (emphasis added).

In 1958, the Legislature created a separate crime of child torture. Section 136a of 1958 PA 97 provided that: "Any parent or guardian or person under whose protection or control any child may be, who tortures such child, shall be guilty of a felony . . . ."[51] This act also amended MCL 750.136 to remove the word "tortures," but left the quoted portion of the statute otherwise unchanged.

In 1985, this Court interpreted the child-cruelty statute, MCL 750.136, in *People v Jackson*.[52] Despite the presence of one of the touchstone words, "willfully," the *Jackson* panel found that specific intent is not an element of the crime of child cruelty.[53] Two years earlier, this Court had interpreted the child-torture statute, MCL 750.136a, in *People v Webb*,[54] and found that it required a showing that a defendant "*intentionally* inflicted extreme, intense, or severe pain or injury upon the victim."[55]

Relying on this precedent, among others, a majority of the panel in *People v Kelley*[56] reached the conclusion that child torture is a specific-intent crime.[57] Visiting Judge Grathwohl, however, dissented. He noted that the decision in *Webb* was based upon dictionary definitions, none of which used the term "intent."[58] He also noted that, under *Jackson*, specific intent is not an element of child cruelty.[59] He then stated that, "[i]f

---

[51] MCL 750.136a.

[52] *People v Jackson*, 140 Mich App 283; 364 NW2d 310 (1985).

[53] *Id.* at 287.

[54] *People v Webb*, 128 Mich App 721; 341 NW2d 191 (1983).

[55] *Id.* at 727 (emphasis added).

[56] *People v Kelley*, 176 Mich App 219; 439 NW2d 315 (1989).

[57] *Id.* at 222.

[58] *Id.* at 225.

[59] *Id.*

child cruelty is not a specific intent crime and the differentiation between child torture and child cruelty is 'the degree of the severity of the injury inflicted,' . . . one wonders how child torture can be a specific intent crime."[60]

Approximately seven months later, the Supreme Court reversed the decision of the majority in *Kelley* "for reasons stated in its dissent."[61] Thus, I believe it fair to conclude, in the view of this Court in *Jackson*, child cruelty was a general-intent crime, and, in the view of the Supreme Court in *Kelley*, child torture was a general-intent crime. If the matter rested there, I think the outcome in this case would be clear: crimes of this nature against children would be general-intent crimes. However, the matter does not rest there.

### B. THE 1988 AMENDMENTS

Effective September 1, 1988—*after* this Court's decision in *Jackson* and *after* this Court's decision in *Kelley*, but *before* the Supreme Court's reversal in *Kelley*—the Legislature repealed the child-cruelty statute and the child-torture statute and replaced these provisions with four degrees of child abuse.[62] In so doing, the Legislature used the phrase "knowingly or intentionally"[63] when creating the crime of first-degree child abuse that we consider today. The Legislature did not use this phrase when creating the crime of second-degree child abuse,[64] but returned to its use

---

[60] *Id.* at 225-226.

[61] *People v Kelley*, 433 Mich 882; 446 NW2d 821 (1989).

[62] MCL 750.136b; see also *People v Kelley, supra*, 176 Mich App 224 n 2.

[63] MCL 750.136b(2).

[64] MCL 750.136b(3).

when creating the crime of third-degree child abuse.[65]

It is a commonly accepted canon of statutory interpretation that when the Legislature acts in a certain subject area, it is presumed that the Legislature is aware of existing judicial interpretations of words and phrases within that subject area. "The Legislature's silence when using terms previously interpreted by the courts suggests agreement with the courts' construction."[66] Thus, under this canon a court can presume that, when using the phrase "knowingly or intentionally" with respect to first-degree and third-degree child abuse, the Legislature knew that this Court had interpreted the child-cruelty statute to be a general-intent crime but had interpreted the child-torture statute to be a specific-intent crime. It must also be presumed, however, that—since it occurred later in time—the Legislature did *not* know that the Supreme Court would interpret the child torture statute to be a general-intent crime.

If the matter rested there, we might well be at sea. Should we interpret the crime of first-degree child abuse to be more akin to the crime of child cruelty and therefore, despite the use of the phrase "knowingly or intentionally," to be a general-intent crime? Alternatively, should we interpret the crime of first-degree child abuse to be more akin to the crime of child torture and therefore to be a specific-intent crime? I lean to the conclusion, although it is admittedly a close call, that the crime of first-degree child abuse originates mainly from the child-cruelty statute. Frankly, however, the canons of statutory interpreta-

---

[65] MCL 750.136b(4).

[66] *People v Lange*, 251 Mich App 247, 255; 650 NW2d 691 (2002), citing *People v Babcock*, 244 Mich App 64, 74-75; 624 NW2d 479 (2000).

tion help us not at all in answering these questions. Fortunately, once again, the matter does not rest there.

## C. THE 1999 AMENDMENTS

In 1999, effective April 3, 2000, the Legislature again amended the child-abuse statute. The amendments did not change the language of the section on first-degree child abuse. However, the amendments changed the section on second-degree child abuse and, at several points, utilized the phrase "knowingly or intentionally."[67] Applying the same canon of statutory interpretation, we can presume that the Legislature was aware of the diverging views of this Court regarding the meaning of touchstone words such as "knowingly" and "intentionally." More to the point, however, we can presume that the Legislature was aware that in *Gould*[68] this Court held the crime of first-degree child abuse to be a specific-intent crime but that, upon review, the Supreme Court classified this holding as dicta.[69] Indeed, I note that the Supreme Court took this action on March 9, 1999, well *before* the Legislature made its changes to the child-abuse statute.

## D. SUMMARY

Considering this history in its totality—and to the extent that we are able to read the tea leaves of legislative intent by applying canons of statutory interpretation—I conclude the Legislature's use of the phrase

---

[67] MCL 750.136b(3)(b) and (c).

[68] *Gould, supra*, 225 Mich App 79 (1997).

[69] *Gould, supra*, 459 Mich 955 (1999).

"knowingly or intentionally" with respect to first-degree child abuse did not signal its intent that this was to be a specific-intent crime. Rather, I conclude that the Legislature used this phrase in 1988 knowing that this Court had previously held the child-cruelty statute to be a general-intent crime, and used this phrase again in 1999 knowing that this Court had variously interpreted these and other touchstone phrases to signal both general-intent and specific-intent crimes, but also knowing that the Supreme Court had, earlier in 1999, held that the finding of the *Gould* panel that first-degree child abuse was a specific-intent crime was dictum.

### IV. CONCLUSION

A careful reader of this opinion will discern a certain skepticism about the process in which courts engage to ascertain legislative intent. I view the use of legislative history—particularly of statements made by legislators in the course of floor debate or staff-generated reports and analyses—to be, at best, a most dubious undertaking. Further, the various judicially constructed canons of interpretation—particularly those that involve making presumptions based upon knowledge imputed to the Legislature—sometimes are so theoretical as to invite exercises in creativity. The canon to which I most wholeheartedly subscribe is the simplest: the Legislature is presumed to have intended the meaning it plainly expressed[70] and when statutory language is clear and unambiguous,

---

[70] *People v Venticinque*, 459 Mich 90, 99-100; 586 NW2d 732 (1998).

judicial construction is neither required nor permitted.[71]

Here, while the words "knowingly" and "intentionally" are simple enough, their meaning is, in context, far from clear and unambiguous. Nonetheless, I believe my conclusion that first-degree child abuse is a general-intent crime to be the correct one. First, I am not persuaded by the analyses in *Gould, Sherman-Huffman*, and *Lerma*. My conclusion in this regard is considerably strengthened by the fact that the Supreme Court has twice labeled the specific-intent portions of these analyses to be dicta.

Second, this Court has vacillated on whether the presence or absence of touchstone words such as "knowingly" or "intentionally" signals that the Legislature means to make the crimes at issue to be general-intent or specific-intent crimes; for every *American Medical Centers* there is a *Lane* or a *Karst*, and for every *Davenport* or *Disimone* there is a *Henry*. Consequently, I think the majority errs when it adopts the *Gould* analysis as its own.

Third, and finally, I believe that when we view the history of the legislation in this area as a whole—and here I emphasize that I am not referring to "legislative history" in the sense of floor debates or staff reports—this history leads to the conclusion, although it is admittedly a close call, that the crime of first-degree child abuse originates mainly from the child-cruelty statute. Accordingly, and reluctantly applying the presumption of knowledge by the Legislature of the decisions of this Court and the Supreme Court, I believe the trial court was correct in catego-

---

[71] *People v Philabaun*, 461 Mich 255, 261; 602 NW2d 371 (1999).

rizing first-degree child abuse as a general-intent crime, and I would affirm on that basis.