# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

AUDRIONNA MARIA RHOADES,

        Defendant-Appellee.

UNPUBLISHED
July 23, 2015

No. 326047
Macomb Circuit Court
LC No. 2014-000354-FC

Before: SAWYER, P.J., and DONOFRIO and BORRELLO, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] the circuit court order granting defendant's motion to quash the information on the charge of second-degree murder, MCL 750.317, and denying defendant's motion to quash the information on the charge of leaving a child unattended in a vehicle resulting in death, MCL 750.135a(2)(d). We affirm.

This case arises from an incident in which the victim, defendant's two-year-old son, died from environmental hyperthermia when he was buckled into a car seat in a van for several hours. The district court bound over defendant on the charges of second-degree murder and leaving a child unattended in a vehicle resulting in death. The circuit court granted defendant's motion to quash the information with regard to the second-degree murder charge, and the court dismissed the charge. The prosecution argues on appeal that the district court did not abuse its discretion in binding over defendant on the charge of second-degree murder since there was probable cause to believe that defendant was the person who left her son unattended in the van where he died and that defendant acted with malice. We agree that the prosecution presented sufficient circumstantial evidence to establish probable cause that defendant left the victim in the van, but disagree that the prosecution presented evidence of malice.

"'A circuit court's decision to grant or deny a motion to quash charges is reviewed de novo to determine if the district court abused its discretion in binding over a defendant for trial.'" *People v Bennett*, 290 Mich App 465, 479; 802 NW2d 627 (2010) (citation omitted). "An abuse

---

[1] See *People v Rhoades*, unpublished order of the Court of Appeals, entered March 6, 2015 (Docket No. 326047).

of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "However, '[t]o the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo.'" *People v Lemons*, 299 Mich App 541, 545; 830 NW2d 794 (2013) (citation omitted; alteration in original).

"'The primary function of a preliminary examination is to determine if a crime has been committed and, if so, if there is probable cause to believe that the defendant committed it.'" *People v Redden*, 290 Mich App 65, 83; 799 NW2d 184 (2010) (citation omitted). There is probable cause to bind over a defendant for trial if the prosecution presents evidence "'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" *Id*. at 83-84 (citation omitted). The prosecution must present *some* evidence with regard to each element of the crime, but it does not need to prove beyond a reasonable doubt each element of the crime. *Id*. at 84. The defendant should be bound over for trial even if there is conflicting evidence presented at the preliminary examination or the evidence raises a reasonable doubt regarding the defendant's guilt. *Id*. The trier of fact should determine the questions of fact arising from the conflicting evidence. *Id*.

"Second-degree murder is a general-intent crime." *People v Maynor*, 256 Mich App 238, 244 n 1; 662 NW2d 468 (2003), aff'd on other grounds by 470 Mich 289 (2004). Specific intent is the "particular criminal intent beyond the act done," while general intent is the intent to do the physical act. *People v Abramski*, 257 Mich App 71, 72-73; 665 NW2d 501 (2003) (citations and quotation marks omitted). The elements of second-degree murder are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014) (citations and quotation marks omitted). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *Id*. "Malice" includes "'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.'" *Id*. at 9-10 (citation omitted). Additionally, "[m]alice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009) (citations and quotation marks omitted). "'The offense of second-degree murder does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences.'" *Id*. (citation omitted). Identity is an essential element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

In *Maynor*, the defendant left her 3-year-old child and 10-month-old child in a hot car for approximately 3-½ hours, and the children died of hyperthermia. *Maynor*, 256 Mich App at 239. The defendant admitted that she left her children in the car for 3-½ hours. *Id*. at 244. This Court held that the defendant's action in leaving the children unattended in the car was intentional, rather than accidental. *Id*. Thus, this Court held that there was sufficient evidence of malice to support the bindover on the charge of second-degree murder. *Id*.

In *People v Giddings*, 169 Mich App 631, 632; 426 NW2d 732 (1988), the defendant's eight-week-old child died of starvation over a period of one month. This Court held that proof of

starvation alone, without evidence of intent, was insufficient to bind over the defendant on the charge of second-degree murder. *Id*. at 634. This Court explained that, while the prosecution presented evidence that the defendant starved her child, the prosecution failed to present evidence regarding the defendant's state of mind during the period of starvation. *Id*.

There was sufficient circumstantial evidence presented at the preliminary examination to identify defendant as the person who put the victim in the car. Defendant was the only person who lived in the trailer who drove the van. Defendant's roommate, Jennifer Walden, never drove the van. Defendant would drive the van when Walden went to work, and the van was the car that defendant normally drove. Walden would occasionally watch the victim when defendant was at work or at the gym, and defendant's father, Johnny Rhoades, would watch the victim when Walden was unable to watch him. Walden watched the victim five or six times during the month leading up to the incident. Defendant would usually put the victim in the back of the van in order to drive him to Johnny's trailer before going to work if Walden could not watch him.

Dr. Daniel Spitz, a medical examiner, testified that the victim was put in the van at approximately 8:00 a.m. Defendant told Shelby Township Police Detective Jason Schmittler that she left for work at approximately 8:15 a.m. Defendant did not ask Walden to watch the victim on the day of the incident. Instead, defendant told Detective Schmittler that she assumed Walden would watch the victim. Defendant told Detective Schmittler that she initially picked up the keys to the van and set them down. Defendant ultimately chose to drive her other car, the LeBaron, to work after she located the keys to the LeBaron. Seth Householder, the man Walden was dating at the time of the incident, testified that there was no indication that the victim was in the house when he talked with Walden via Skype on the day of the incident. When Walden found the victim, he was fully dressed in shorts and a blue zip-up jacket. The victim was dressed in only a diaper when Walden saw him earlier that morning. The doors on the van were closed and the victim was buckled into his car seat when Walden found him, which indicates that the victim did not put himself into the car seat. This circumstantial evidence was sufficient to identify defendant as the person who left the victim in the van since the evidence indicated that defendant dressed the victim and put him in the van in the morning before ultimately deciding to drive the LeBaron to work. See *Yost*, 278 Mich App at 356. Defendant also stated that she "'didn't do it'" at "odd times" during her interview with Shelby Township Police Officer James Osterland, and when Officer Osterland had not asked defendant about her involvement, which further suggests that she put the victim in the van. See *id*.

However, the prosecution failed to provide direct or circumstantial evidence that defendant's action in leaving the victim in the hot car was intentional, rather than accidental. Defendant initially planned to drive the van to work, but changed her mind after she found the keys to the LeBaron. Defendant asked who was taking care of the victim when she arrived at the hospital, which indicates that she was not aware that she put the victim in the van. The prosecution points out that defendant did not call Walden to check in on the victim, but fails to show how this fact indicates that defendant acted intentionally since Walden could not recall at the preliminary examination if or how often defendant would call her while defendant was at work. There was no evidence presented at the preliminary examination that defendant intentionally left the victim in the car for an extended period of time in wanton and willful disregard of the high risk of death or great bodily harm. See *Henderson*, 306 Mich App at 9; *Maynor*, 256 Mich App at 244; *Giddings*, 169 Mich App at 634. Instead, the facts presented at

the preliminary examination indicated that defendant accidentally left the victim in the van before taking him to Johnny's and forgot he was there when she decided to take the LeBaron to work instead of the van. See *Henderson*, 306 Mich App at 9; *Maynor*, 256 Mich App at 244; *Giddings*, 169 Mich App at 634.

The prosecution alternatively argues that defendant acted with malice when she left the victim alone, regardless of whether she put him in the car. However, even assuming that defendant did not put the victim in the car, defendant also did not leave the victim at home alone since Walden was in the trailer. Furthermore, the only testimony presented at the preliminary examination related to defendant's state of mind when she left the victim at home was that she assumed that Walden would watch the victim. Thus, there was no evidence that defendant intended to do an act in wanton and willful disregard of the likelihood that the act would result in death or great bodily harm. See *Henderson*, 306 Mich App at 9-10; *Maynor*, 256 Mich App at 244. For the reasons stated above, there was insufficient evidence of malice to support the district court's decision to bind over defendant for trial on the charge of second-degree murder. See *Redden*, 290 Mich App at 83-84.

Affirmed.

/s/ David H. Sawyer
/s/ Pat M. Donofrio
/s/ Stephen L. Borrello

-4-