# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANGELA MARIE ALEXIE,

        Defendant-Appellant.

UNPUBLISHED
October 17, 2017

No. 332830
Macomb Circuit Court
LC No. 2015-000615-FC

Before: GLEICHER, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of felony murder, MCL 750.316(1)(b), and first-degree child abuse, MCL 750.136b(2), stemming from the death of her newborn son. We affirm.

## I. BACKGROUND

This case arises from the death of victim, an unnamed male baby, who was identified as "Baby John Doe" on his death certificate. Victim's frozen body was found on the conveyer belt of a recycling facility in Roseville on January 15, 2015.

Roseville Police Lieutenant Raymond Blarek and Roseville Police Detective Brad McKenzie investigated victim's death. On January 26, 2015, defendant voluntarily submitted to questioning at the Roseville Police Station. Despite the voluntariness of this interview, Detective McKenzie provided defendant with a *Miranda*[1] waiver form which advised defendant of several of her Fifth Amendment rights. Detective McKenzie also verbally advised defendant of her rights in accordance with that form. Defendant read each line of the form "out loud" before signing it. As pertinent to this dispute, the form advised defendant that "[y]ou have the right to talk to a lawyer while you are being questioned," and that "[i]f you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning." Defendant did not request a lawyer and submitted to a 90-minute interview with Lieutenant Blarek and Detective McKenzie. At the end of the interview, defendant was arrested and placed into custody at the

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1102; 16 L Ed 2d 694 (1966).

Roseville Police Department. Detective McKenzie interviewed defendant again on January 27, 2015. Prior to the second interview, Detective McKenzie provided defendant with an identical *Miranda* waiver form, and defendant signed the form after reading her rights out loud.

Defendant moved in limine to suppress the statements she made during her interviews with police on the grounds that she did not voluntarily, knowingly, and intelligently waive her *Miranda* rights before making those statements. The trial court denied the motion, finding that defendant was not in custody for her January 26, 2015, interview, and that defendant voluntarily, knowingly, and intelligently waived her rights before the January 27, 2015, interview.

Evidence from defendant's interviews was admitted at trial. Defendant gave conflicting stories of victim's birth, but ultimately admitted that she gave birth to victim on December 22, 2014, in a detached garage at a home in Eastpointe. After she gave birth to victim, defendant placed a cushion on top of victim and left him in the garage. Defendant claimed that she did not intend for victim to die, and had actually planned on bringing victim to the fire department. Defendant also denied placing victim in a recycling bin.

Lieutenant Blarek and Detective McKenzie investigated the garage where victim was born. Their testimony indicated that the garage had no heating, no glass in the windows, and several holes in the garage through which wind could freely travel. Additionally, the garage door did not work and was stuck half-open. Accordingly, the garage temperature was as cold as the ambient winter temperature outside.

The forensic examiner testified at trial that victim died as a result of hypothermia on December 24, 2014. The examiner's autopsy revealed no evidence that victim had eaten anything before his death. Victim's blood contained traces of tramadol—a powerful pain medication—that was likely transferred to victim in utero.

The trial court admitted several pieces of evidence regarding defendant's prior bad acts under MCL 768.27b. This evidence indicated that defendant had previously given birth to another child in the bathroom of her home. The evidence also indicated that defendant had attempted to hide the pregnancy of a third child before her birth. Finally, the trial court admitted testimony that defendant was aware of her pregnancy with victim and that she actively tried to hide that pregnancy from others. Several text messages from the days following victim's birth show that defendant sent photographs of herself while claiming to have lost approximately 20 pounds in her midsection.

## II. ANALYSIS

*Sufficient Evidence Supports Defendant's Convictions.* Defendant contends that the prosecution presented insufficient evidence to convict her of first-degree child abuse, and therefore, insufficient evidence to convict her of felony murder. We review de novo a challenge to the sufficiency of the evidence, *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009), viewing the evidence "in the light most favorable to the prosecution in order to determine whether a rational trier of fact could have found that the prosecution proved the elements of the crime beyond a reasonable doubt," *People v Levigne*, 297 Mich App 278, 281-282; 823 NW2d 429 (2012). When addressing challenges to the sufficiency of the evidence, we give special

respect to role of the trier of fact in determining the weight of the evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). The trier of fact may infer intent from all the facts and circumstances, including circumstantial evidence. *People v Kissner*, 292 Mich App 526, 534; 808 NW2d 522 (2011); *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005).

A person is guilty of first-degree child abuse if they knowingly or intentionally cause serious physical or mental harm to a child. *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997). "[I]n order to convict a defendant of first-degree child abuse, it must be shown that the defendant intended to harm the child, not merely that the defendant engaged in conduct that caused harm." *Id*. at 84-85. As relevant to this case, a person is guilty of felony murder when a victim dies as a result of the defendant's commission of first-degree child abuse. MCL 750.316(1)(b).

On appeal, defendant argues that the prosecution presented insufficient evidence for the jury to find that defendant intended to harm victim. We disagree.

Defendant hid her pregnancy and gave birth to victim in a garage without heat or even a working door. Defendant then placed a cushion over victim and left him in that garage without any protection from the elements, and without any food, for several days. Victim's frozen body was eventually recovered at a recycling facility, as it came down the conveyer belt with discarded recyclables. Although defendant told police that she did not intend to harm victim, her conduct indicated otherwise. In any event, the jury was entitled to reject defendant's theory of the case. *Kanaan*, 278 Mich App at 619. Accordingly, we conclude that sufficient evidence was presented at trial to support defendant's convictions of first-degree child abuse and felony murder.

*Defendant's* Miranda *Waiver Was Knowing and Voluntary.* Defendant next contends that the trial court should have suppressed statements defendant made during her interviews with police, because defendant's waiver of her *Miranda* rights was not made knowingly and intelligently. We review de novo the trial court's "ultimate ruling" on a motion to suppress, but review the factual findings accompanying that ruling for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "Whether a defendant's statement was knowing, intelligent, and voluntary is a question of law, which the court must determine under the totality of the circumstances." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005).

"To protect a defendant's Fifth Amendment privilege against self-incrimination, custodial interrogation must be preceded by advice to the accused that [she] has a right to remain silent, that any statement [she] does make may be used as evidence against him, and that [she] has a right to the presence of an attorney, either retained or appointed." *People v Cortez*, 299 Mich App 679, 691; 832 NW2d 1 (2013) (internal quotation marks and citation omitted). "Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). "To establish a valid waiver, the state must present evidence sufficient to demonstrate that the accused understood that [she] did not have to speak, that [she] had the right to the presence of counsel, and that the state could use what [she] said in a later trial against [her]." *People v Cheatham*, 453 Mich 1, 29; 551 NW2d

-3-

355 (1996). As pertinent to this dispute, a warning is sufficient to advise the suspect of her rights if it reasonably conveys the rights protected by *Miranda*. *Florida v Powell*, 559 US 50, 60; 130 S Ct 1195; 175 L Ed 2d 1009 (2010).

Defendant does not contend that her waiver was involuntary, but rather, she contends that her waiver of her *Miranda* rights was not made knowingly and intelligently because Detective McKenzie and the form that he provided to her did not adequately advise her of her right to consult with counsel before questioning. We disagree.

The trial court made a factual determination that defendant was not in custody at the time of the January 26, 2015, interview. Defendant fails to challenge that finding on appeal. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.") Because "*Miranda* warnings are not required unless an individual is subjected to custodial interrogation," *People v Roberts*, 292 Mich App 492, 504; 808 NW2d 290 (2011), we conclude that the trial court properly admitted the statements defendant made during her January 26, 2015, interview.

Defendant's January 27, 2015, interview, however, was conducted after defendant was placed in jail, and therefore, to admit any of defendant's statements from that interview at trial, police were required to obtain a knowing and intelligent waiver of defendant's *Miranda* rights. Defendant argues that the statements made during the January 27, 2015, interview were not admissible because she was not advised that she "had a right to consult with an attorney before and during questioning." Nonetheless, defendant read and signed a waiver of her *Miranda* rights on a form that advised her that she had the right to talk to a lawyer while she was being questioned, and that if she could not afford a lawyer, one would be appointed to represent her before any questioning. Linguistic exactness is not required when informing a suspect of her *Miranda* rights. *Powell*, 559 US at 60. It reasonably follows that advising defendant of her right to appointed counsel before any questioning, combined with a right to speak to that counsel during questioning, would reasonably convey to a defendant her right to consult with an attorney before questioning. See *id*. Accordingly, we conclude that defendant knowingly and intelligently waived her Fifth Amendment rights and that the trial court properly admitted into evidence statements the defendant made during each of her interviews.

*Anonymous Jury Did Not Prejudice Defendant*. Defendant next argues she was denied a fair trial by the trial court's use of an anonymous jury—one in which jurors are referred to by number instead of name—without an instruction that jury anonymity was not to reflect upon defendant's guilt or innocence. According to defendant, referring to jurors by number indicated that the trial court predetermined that she was guilty and deprived her of her presumption of innocence.

We review this unpreserved issue for plain error affecting defendant's substantial rights. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). To establish that an error affected defendant's substantial rights, defendant must prove prejudice flowing from the error, meaning that the error affected the outcome of the lower court proceedings. *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015).

"A challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Hanks*, 276 Mich App at 93. Defendant has not provided this Court with any persuasive argument that the anonymous jury affected the outcome of the lower court proceedings and the record is bereft of any indication that meaningful voir dire was prevented or defendant's presumption of innocence was compromised by the trial court's usage of numbers rather than names to identify prospective jurors. Indeed, the trial court specifically instructed the jury that defendant was presumed to be innocent and that the fact that she was charged with a crime was not evidence that she was guilty. The jury is presumed to follow its instructions, *People v Abraham*, 256 Mich App 264, 279; 662 NW2d 836 (2003), and we find defendant's argument regarding the anonymous jury to be without merit.

*Evidence of Defendant's Previous Domestic Violence Was Properly Admitted.* Lastly, defendant contends that the trial court abused its discretion by admitting unduly prejudicial evidence of defendant's prior domestic violence. "The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion." *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. at 722-723.

The trial court admitted several pieces of evidence pertaining to defendant's prior bad acts under MCL 768.27b, which provides that relevant evidence of a defendant's prior domestic violence is admissible in a criminal action in which defendant is charged with an offense involving domestic violence, and may be used "for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403." Defendant concedes that "the incidents might have shown some propensity for abuse [or] neglect," but she argues that the "description of several episodes [of abuse or neglect] warped the jury," such that the evidence was unduly prejudicial under MRE 403.

Nonetheless, other than stating in conclusory fashion that the volume of evidence was overwhelming, defendant has failed to carry her burden to support that contention. Defendant failed even to identify the exact testimony that she challenges on appeal, and has not provided any particularized argument as to how the evidence unduly prejudiced her defense. Further, while defendant acknowledges that the trial court provided a limiting instruction to the jury regarding the challenged evidence, she contends that the jury instruction was insufficient to cure any unfair prejudice caused by the admission of the challenged evidence. Defendant, however, fails to provide any authority in support of that contention. See *Kelly*, 231 Mich App at 640-641 ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."). Accordingly, defendant has not shown any entitlement to relief.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle