Griffin, J.
We granted the prosecution’s delayed application for leave to appeal an order of the circuit court affirming a district court order dismissing charges against defendant of burning personal property with a value greater than $1,000 but less than $20,000, MCL 750.74(l)(c)(i), false pretenses involving a value greater than $1,000 but less than $20,000, MCL 750.218(4)(a), and filing a false report of a felony to *512 the police, MCL 750.411a(l)(b). We reverse and remand for trial.
i
STATEMENT OF FACTS
On April 9, 1999, at approximately 4:00 A.M. Lieutenant Dennis Chojnacki of the Detroit Fire Department responded to an automobile fire on a city street. When Lt. Chojnacki arrived, he saw defendant’s sport utility vehicle on fire and proceeded to extinguish the fire. After examining the vehicle, Lt. Chojnacki determined that the fire had started in the engine compartment. Because Chojnacki was unable to find any accidental cause of the fire, he reported that the fire was of “suspicious” origin. At approximately 8:00 P.M. on the same date, Lt. Derek Segars, an expert arson investigator for the Detroit Fire Department, went to investigate defendant’s burned vehicle, which was still parked on the street. Without a search warrant, Lt. Segars searched the vehicle and discovered evidence of arson.
On April 11, 1999, defendant reported to the police that her vehicle was missing. Defendant stated in the report that she had last seen the vehicle in her driveway at 2:30 P.M. on April 9, 1999 (approximately ten hours after the fire department had extinguished the fire). She said that she first noticed that it was missing at 1:30 A.M. on April 10, 1999. Later, defendant confirmed in a written statement that she last saw her vehicle between 2:00 and 2:30 P.M. on April 9, 1999.
At the preliminary examination, defendant argued that Lt. Segars’ search of her vehicle without a warrant was unreasonable and therefore all evidence of *513 arson must be suppressed. The district court, relying on Michigan v Tyler, 436 US 499; 98 S Ct 1942; 56 L Ed 2d 486 (1978), ruled that the fire department needed a warrant to search the vehicle to determine the origin of the fire. Pursuant to the exclusionary rule of Mapp v Ohio, 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961), the district court disallowed Segars’ testimony regarding the evidence of arson he discovered during his search of the vehicle without a warrant. Thereafter, the district court entered an order dismissing all charges against defendant on the basis of insufficient evidence. The circuit court affirmed, and we granted the prosecution’s delayed application for leave to appeal.
n
THE AUTOMOBILE WARRANT EXCEPTION
In dismissing all charges against defendant, the lower courts applied the “judicially created”[1] exclu *514 sionary rule to suppress evidence discovered during the search, based on probable cause, of defendant’s burned automobile. The district and circuit courts relied on a decision involving the arson of a dwelling house, Tyler, supra, as authority for their rulings that evidence discovered during the search of defendant’s automobile without a warrant must be suppressed. Both courts rejected application of the automobile exception to the warrant requirement on the ground that defendant’s vehicle was immobile at the time of the search.
A
MOBILITY OF AUTOMOBILES
First, we disagree with the factual premise that defendant’s vehicle was immobile. Although the motor of the automobile was inoperable after the fire, the vehicle was capable of mobility. During the inter *515 val between the first and second searches, defendant could have moved the automobile by summoning a tow truck. Defendant’s automobile could have been hauled to any location while the police were preoccupied in court seeking a search warrant.
More fundamentally, application of the well-established automobile exception does not rise or fall depending on the peculiarities of the automobile to be searched. On the contrary, the exception was established because of the mobility of automobiles in general. Carroll v United States, 267 US 132, 153; 45 S Ct 280; 69 L Ed 543 (1925) (a ship, motorboat, wagon, or automobile is inherently different from a dwelling house); Michigan v Thomas, 458 US 259, 261; 102 S Ct 3079; 73 L Ed 2d 750 (1982) (application of the exception does not depend on the likelihood in each particular case that the automobile would have been driven away). Numerous evidentiary hearings would be required in the event that application of the automobile exception were based on fact rather than law. Further, evidence seized as a result of many reasonable searches would be suppressed if it were later discovered that at the time of the search the vehicle had a dead battery, flat tire, or some other mechanical problem that hindered its self-mobility.
In United States v Gastiaburo, 16 F3d 582 (CA 4, 1994), the police impounded the defendant’s automobile, thus making it immobile. Nevertheless, the Fourth Circuit Court of Appeals held that the automobile exception applied:
Gastiaburo has made two responses to the government’s “automobile exception” argument. First, he has contended that impoundment effectively transformed his car from a movable vehicle into a “fixed piece of properly,” thus making the automobile exception to the warrant requirement *516 inapplicable. However, the justification to conduct a warrantless search under the automobile exception does not disappear merely because the car has been immobilized and impounded. See United States v Johns, 469 US 478, 484; 105 S Ct 881, 885; 83 L Ed 2d 890 (1985); Florida v Meyers, 466 US 380, 382; 104 S Ct 1852, 1853; 80 L Ed 2d 381 (1984) (per curiam); Michigan v Thomas, 458 US 259, 261; 102 S Ct 3079-3080-81; 73 L Ed 2d 750 (1982) (per curiam); see also [United States v Turner, 933 F2d 240, 244 (CA 4, 1991); United States v $29,000 US Currency, 745 F2d 853, 855 (CA 4, 1984)]. Under the Supreme Court’s precedents, the fact that impoundment may have made it virtually impossible for anyone to drive the car away or to tamper with its contents is irrelevant to the constitutionality of a warrant-less search under the circumstances of the present case. See, e.g., Thomas, 458 US at 261; 102 S Ct at 3081. [Gastiaburo, supra at 586.]
The strongest authority in support of Gastiaburo is Michigan v Thomas, supra. In lower court proceedings, our Court in People v Thomas, 106 Mich App 601; 308 NW2d 170 (1981), ordered the suppression of evidence discovered in a vehicle on the basis that the automobile exception did not apply because the occupants of the vehicle had been arrested and the vehicle immobilized. On petition for certiorari, the United States Supreme Court reversed, holding:
We reverse. In Chambers v Maroney, 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970), we held that when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody. We firmly reiterated this holding in Texas v White, 423 US 67; 96 S Ct 304; 46 L Ed 2d 209 (1975). See also United States v Ross, 456 US 798, 807, n 9; 102 S Ct 2157, 2163, n 9; 72 L Ed 2d 572 (1982). It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a *517 reviewing court’s assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with,, during the period required for the police to obtain a warrant. [Michigan v Thomas, supra, 458 US 261 (emphasis added).]
See also Maryland v Dyson, 527 US 465, 466; 119 S Ct 2013; 144 L Ed 2d 442 (1999) (“the ‘automobüe exception’ has no separate exigency requirement”), and Florida v Meyers, 466 US 380; 104 S Ct 1852; 80 L Ed 2d 381 (1984).
B
reduced expectation of privacy for automobiles
In addition, the lower courts failed to recognize or apply the second basis for the automobile exception, which is the reduced expectation of privacy regarding automobiles. In Pennsylvania v Labron, 518 US 938, 940; 116 S Ct 2485; 135 L Ed 2d 1031 (1996), the United States Supreme Court stated:
Our first cases establishing the automobile exception to the Fourth Amendment’s warrant requirement were based on the automobile’s “ready mobility,” an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear. California v Carney, 471 US 386, 390-391; 105 S Ct 2066, 2068-2069; 85 L Ed 2d 406 (1985) (tracing the history of the exception); Carroll v United States, 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925). More recent cases provide a further justification: the individual’s reduced eocpectation of privacy in an automobile, owing to its pervasive regulation. Carney, supra at 391-392; 105 S Ct at 2069-2070. [Emphasis added.]
See also People v Kazmierczak, 461 Mich 411, 418; 605 NW2d 667 (2000).
*518 The Supreme Court explained in California v Carney, 471 US 386, 392; 105 S Ct 2066; 85 L Ed 2d 406 (1985), that the automobile exception arises from the decrease in the expectation of privacy associated with vehicles because of their regulation:
These reduced expectations of privacy derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways. Cady v Dombrowski [413 US 433, 440-441; 93 S Ct 2523; 37 L Ed 2d 706 (1973)]. As we explained in South Dakota v Opperman [428 US 364, 368; 96 S Ct 3092; 49 L Ed 2d 1000 (1976)], an inventory search case:
“Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.”
The public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental need for regulation.
In summary, because defendant’s burned automobile is not a dwelling house, the warrant requirements to search a burned dwelling set forth in Tyler, supra, are not applicable. Instead, on the basis of the dual grounds of the automobile exception, we hold that suppression is not warranted by the Fourth Amendment as applied to the states by the Fourteenth Amendment because the arson investigator had probable cause to search the vehicle without a warrant.
*519 in
MICHIGAN CONSTITUTION
Next we hold that suppression is also unjustified under the Michigan Constitution. In this regard, we note that our state constitutional guarantee against unreasonable searches and seizures contains the following antiexclusionary clause:
The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state. [Const 1963, art 1, § 11.]
The history of this provision and its predecessor was carefully traced by Justice Brickley in People v Nash, 418 Mich 196, 208-215; 341 NW2d 439 (1983). As noted, id., the citizens of our state added an anti-exclusionary provision to our constitution in 1936 in response to People v Stein, 265 Mich 610; 251 NW 788 (1933), which had excluded from evidence an illegally seized weapon. Language prohibiting the exclusion from evidence of “any narcotic drug or drugs” was added in 1952 to Const 1908, art 2, § 10 (now Const 1963, art 1, § 11). Although the delegates to the constitutional convention of 1961-62 were fully aware of Mapp, supra, the drafters of our constitution nevertheless continued with an antiexclusionary provision in the hope that the federal precedent would be overturned or limited to dwellings.
The language of the constitutional provision and its history “precludes a construction of the Michigan search and seizure clause imposing a higher standard of reasonableness for searches and seizures of items named in the proviso than the United States Supreme *520 Court has held applicable under the Fourth Amendment.” People v Moore, 391 Mich 426, 435; 216 NW2d 770 (1974). As stated by our Supreme Court in People v Catania, 427 Mich 447, 466; 398 NW2d 343 (1986): “There is no basis in this case for holding that the Michigan Constitution, art 1, § 11, permits greater protection than the United States Constitution.” See also People v Collins, 438 Mich 8, 25; 475 NW2d 684 (1991) (“ait 1, § 11 is to be construed to provide the same protection as that secured by the Fourth Amendment, absent ‘compelling reason’ to impose a different interpretation”).[2]
Because the evidence discovered in the search of defendant’s automobile without a warrant is not excluded by operation of the United States Constitution, we similarly hold that exclusion is not warranted under Const 1963, art 1, § 11. See, generally, People v Levine, 461 Mich 172, 178-179; 600 NW2d 622 (1999).
IV
ORDER OF DISMISSAL
Finally, having concluded that the evidence of arson discovered during the search of defendant’s automobile was admissible, we conclude that the lower courts erred in dismissing the charges against defendant of burning personal property valued at greater than $1,000 but less than $20,000, MCL 750.74(l)(c)(i), false pretenses involving a value greater than $1,000 but less than $20,000, MCL 750.218(4)(a), and filing a false report of a felony to *521 the police, MCL 750.411a(l)(b). Here, there is evidence of arson—defendant’s financial motive of filing an insurance claim and defendant’s false statement to the police that she had last seen the vehicle at her residence approximately ten hours after the fire department had extinguished the fire. The direct and circumstantial evidence constitutes sufficient probable cause to bind defendant over for trial.
If, at the conclusion of the preliminary examination, it appears to the magistrate that there is probable cause to believe that a felony has been committed and that defendant committed it, the magistrate must bind defendant over for trial. MCL 766.13; MCR 6.110(E); People v Mason, 247 Mich App 64, 71; 634 NW2d 382 (2001). “The district court’s inquiry is not limited to whether the prosecution has presented sufficient evidence on each element of of [sic] the offense, but extends to whether probable cause exists after an examination of the entire matter based on legally admissible evidence.” People v Crippen, 242 Mich App 278, 282; 617 NW2d 760 (2000). “This probable cause standard of proof is less than proof beyond a reasonable doubt.” Mason, supra at 71. Probable cause exists when there is a reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a cautious person to believe that the accused is guilty of the offense charged. People v Hudson, 241 Mich App 268, 279; 615 NW2d 784 (2000). Following our review de novo of the circuit court’s decision to affirm, we hold that the district court abused its discretion in dismissing the charges. Mason, supra at 70-71.
Reversed and remanded for trial. We do not retain jurisdiction.
*522 Saad, J., concurred.

 Contrary to the constitutional premise of Mapp v Ohio, supra at 655 (“We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.”), the United States Supreme Court has now determined that the use of evidence seized in violation of the Fourth and Fourteenth Amendments does not violate the United States Constitution:
We have emphasized repeatedly that the governments’ use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution. See, e.g., United States v Leon, 468 US 897, 906; 104 S Ct 3405, 3411-3412; 82 L Ed 2d 677 (1984); Stone v Powell, 428 US 465, 482, 486; 96 S Ct 3037, 3046-3047, 3048-3049; 49 L Ed 2d 1067 (1976). Rather, a Fourth Amendment violation is “ ‘fully accomplished’ ” by the illegal search or seizure, and no exclusion of evidence from a judicial or administrative proceeding can “ ‘cure the invasion of the defendant’s rights which he has already suffered.’ ” United States v Leon, supra at 906; 104 S Ct at 3412 (quoting Stone v Powell, supra at 540; 96 S Ct at 3074, White, J., dissenting). The exclusionary rule is instead a judicially created *514 means of deterring illegal searches and seizures. United States v Calandra, 414 US 338, 348; 94 S Ct 613, 620; 38 L Ed 2d 561 (1974). As such, the rule does not “proscribe the introduction of illegally seized evidence in all proceedings or against all persons,” Stone v Powell, supra at 486; 96 S Ct at 3049, but applies only in contexts “where its remedial objectives are thought most efficaciously served,” United States v Calandra, supra at 348; 94 S Ct at 620; see also United States v Janis, 428 US 433, 454; 96 S Ct 3021, 3032; 49 L Ed 2d 1046 (1976) (“If. .. the exclusionary rule does not result in appreciable deterrence, then, clearly, its use in the instant situation is unwarranted”). Moreover, because the rule is prudential rather than constitutionally mandated, we have held it to be applicable only where its deterrence benefits outweigh its “substantial social costs.” United States v Leon, 468 US at 907; 104 S Ct at 3412. [Pennsylvania Bd of Probation & Parole v Scott, 524 US 357, 362-363; 118 S Ct 2014; 141 L Ed 2d 344 (1998).]
See also People v Stevens (After Remand), 460 Mich 626, 639-640; 597 NW2d 53 (1999), and People v Perry, 201 Mich App 347, 353-359; 505 NW2d 909 (1993) (Griffin, P.J., concurring).

 Defendant has not argued a compelling reason to construe art 1, § 11 more broadly than the Fourth Amendment. Cf. Sitz v Dep’t of State Police, 443 Mich 744; 506 NW2d 209 (1993).