# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

QUINTEL ANDREW WEST,

Defendant-Appellant.

UNPUBLISHED
December 16, 2014

No. 317109
Saginaw Circuit Court
LC No. 12-037699-FC

Before: M. J. KELLY, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Defendant appeals as of right from his convictions following a jury trial of first-degree felony murder, MCL 750.316; assault with intent to murder, MCL 750.83; first-degree home invasion, MCL 750.110a(2); conspiracy to commit first-degree home invasion, MCL 750.110a(2) and MCL 750.157a; armed robbery, MCL 750.529; conspiracy to commit armed robbery, MCL 750.529 and MCL 750.157a; carrying a dangerous weapon with unlawful intent, MCL 750.226; and five counts of possession of a firearm during the commission of a felony (felony-firearm) MCL 750.227b. The trial court sentenced him to prison terms of life without parole for the murder conviction, 210 months to 40 years for the assault conviction, 5 to 20 years for both home-invasion convictions, 210 months to 40 years for both armed robbery convictions, and two years for each felony-firearm conviction. We affirm.

This appeal involves the shooting death of Michael Kuhlman and related crimes stemming from a robbery and home invasion that occurred while Kuhlman and the other victims were playing poker at Kuhlman's home. Evidence against defendant included the recovery of a handgun in defendant's possession whose forensic characteristics matched evidence recovered from the scene, testimony about defendant's purchase of a consistent-looking gun, clothing found in defendant's possession that matched that worn by one of the robbers, a photograph on defendant's cellular telephone that depicted him posing with cash and a handgun, a victim's cellular telephone found in an area behind defendant's home, and cellular-telephone-analysis evidence showing telephone calls made between Kuhlman and defendant on the day of the robbery.

Defendant first argues that the prosecution witness admitted as an expert witness regarding cellular telephone data should not have been permitted to opine that, given the data provided by the telephone carrier, defendant's cellular telephone was not stationary during the

-1-

evening of the robbery, but was moving around the Saginaw area and at times was close to Kuhlman's home. This Court reviews the admission of evidence for an abuse of discretion. *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). To the extent that a decision about the admission of evidence involves a "preliminary question[] of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence," then review of that issue is de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

The Michigan Supreme Court has referred to the requirements of *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993), regarding the reliability of expert testimony. See *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780 n 46; 685 NW2d 391 (2004). Specifically, MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Defendant does not challenge the introduction of the expert's testimony showing that calls were made between defendant and Kuhlman, the fact that each call involved one or more cellular towers, or more precisely "sections" of tower coverage, nor the timing of the calls. In other words, he does not challenge the reliability of the data given to the expert from Verizon, the provider. Instead, he challenges the "location" opinion testimony provided by the expert and, in particular, the expert's opinion that normally if a call began on one cellular tower and ended on another tower it would mean that the caller was moving. This is essentially a challenge to requirements (1) and (2) above, with a primary focus on requirement (2). Defendant argues that even if a Verizon computer algorithm could show why a certain tower or tower section carried a particular telephone call, this algorithm was unknown to the expert and thus his conclusion was not based on adequate facts or data, nor was it the product of reliable principles and methods.

"When evaluating the reliability of a scientific theory or technique, courts consider certain factors, including but not limited to whether the theory has been or can be tested, whether it has been published and peer-reviewed, its level of general acceptance, and its rate of error if known." *People v Kowalski*, 492 Mich 106, 131; 821 NW2d 14 (2012). However, "the trial court's role as gatekeeper does not require it to search for absolute truth, to admit only uncontested evidence, or to resolve genuine scientific disputes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008) (internal quotation marks and citation omitted). The proper inquiry is whether the expert opinion is rationally derived from a sound foundation, not whether it is ultimately correct or universally accepted. *Id*.

We conclude that defendant has shown that the trial court erred when it permitted the prosecution to present the expert's opinion that the cellular tower data likely indicated that defendant's cellular telephone was moving around Saginaw during the time of the robbery and,

in particular, that the telephone was near Kuhlman's location. Indeed, the expert's own testimony undermined the reliability of this opinion. He acknowledged that he could not testify regarding how Verizon routes calls and that calls did not always connect to the nearest tower. He also stated that call volume was one of the factors that affected which tower would connect with a telephone. He stated that one of the ways that a telephone call could be rerouted to a different tower during a call would be if the telephone was moving, but did not know whether other reasons could cause the telephone to switch towers. He also stated that some of the cellular tower service areas overlapped so that moving a few feet could cause the telephone to switch towers. Nothing in the expert's training told him how far the tower service areas reached. In short, the expert admitted he was not qualified, or at least did not have the underlying factual data, to opine in the instant case about the location of defendant's telephone with reasonable reliability.

However, because it does not affirmatively appear more probable than not that this testimony was outcome-determinative, any error was harmless. *Lukity*, 460 Mich at 495-496. Nothing prevented the jury from drawing its own opinion about the location of the telephone calls from the data presented by the expert, and, significantly, the expert was very forthcoming about the shortcomings in the data he had been furnished. In addition, defendant's own expert witness further explained the inherent unreliability concerning the location data. Given the extensive cross-examination of the prosecution's expert, we find that the jury was not left with a misunderstanding of the extent to which the cellular telephone data could be used. We also note the other very strong evidence linking defendant to the crimes. Accordingly, any error in allowing the expert's opinion testimony concerning location information was harmless. See *Benton,* 294 Mich App at 199 ("Evidentiary error does not require reversal unless after an examination of the entire cause, it appears more probable than not that the error affected the outcome of the trial in light of the weight and strength of the properly admitted evidence.").

Defendant next argues that the trial court erred in denying his motion to suppress, thereby allowing the prosecution to present evidence found after various improper searches of his automobile. "This Court reviews a trial court's findings of fact at a suppression hearing for clear error and reviews de novo its ultimate decision on a motion to suppress the evidence." *People v Tavernier*, 295 Mich App 582, 584; 815 NW2d 154 (2012). Questions of law relevant to a motion to suppress evidence are reviewed de novo. See *People v Stevens (After Remand)*, 460 Mich 626, 631; 597 NW2d 53 (1999).

During the suppression hearing, Saginaw Township Police Detective Sergeant Jack Doyle testified he had been given defendant's name as a possible suspect in the robbery, including information that defendant drove a maroon Blazer and had been seen at Kuhlman's home on the day of the robbery. The day after the shooting, Doyle saw defendant enter the suspect Blazer as he watched defendant's residence. In an unmarked police car, he and another detective followed the car onto the freeway. The Blazer then began to slow down, and the officers did as well; at one point the cars reached approximately 30 miles an hour. Defendant began to get off the freeway using an exit ramp, but as Doyle began to follow him, defendant swerved back onto the freeway, traveling over "the grass or gravel" in the area between the freeway and the ramp. Defendant reentered the freeway in front of a red truck pulling a trailer, causing the truck driver to use his brakes. The officers continued to follow defendant and defendant was stopped and arrested for reckless driving.

-3-

Intending to impound the car, Saginaw Township Police Detective Robert Bean "reached in, on the front seat" and placed his hand on the center console. As he did so, the console moved. Bean then lifted the console and noticed a 30-round loaded gun magazine. He left the magazine, and the car was towed to the police station. He and Officer Kevin Gloude searched the car at the station and recovered the magazine. Gloude testified that he then saw a corner of a plastic baggie sticking out from between the plastic housing the car's map lights and the roof liner. When he removed it from the partly attached housing, he saw that the baggie contained 12 pills, later determined to be Adderall. Gloude then searched the car, and because he had previously found contraband behind car glove boxes, he searched in that area. He pushed the plastic tabs that allowed the glove box to swing down and found a loaded 9mm handgun. He also removed black knit caps and a pair of gloves from the car.

The trial court concluded that the evidence was admissible because the inventory searches were proper following defendant's arrest for reckless driving. The court also concluded that the police had probable cause to search the car under the automobile exception based on the previous information concerning defendant's possible involvement in the armed robbery/homicide, the fact that a victim's telephone was found at a home near defendant's home, and defendant's actions while followed by the police.

The United States and the Michigan Constitutions prohibit unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The basic rule is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v Gant*, 556 US 332, 338; 129 S Ct 1710; 173 L Ed 2d 485 (2009) (citation, quotation marks, and emphasis omitted). In other words, warrantless searches and seizures are presumptively unreasonable unless an exception to the warrant requirement applies. Inventory searches are recognized exceptions to the warrant requirement. *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011).

In general, an automobile may be searched by police officers without a search warrant if there is probable cause to support the search. *People v Kazmierczak*, 461 Mich 411, 418-419; 605 NW2d 667 (2000). "[T]he automobile exception is premised on an automobile's ready mobility and pervasive regulation, and if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more." *Id*. at 418.

Defendant admits that the portion of the inventory search in which Gloude found the bag of Adderall was proper. Nor does defendant contest the general principle that a warrantless search may be conducted under the automobile exception even after a vehicle is in police custody and no longer subject to being driven away. See *People v Carter*, 250 Mich App 510, 515-518; 655 NW2d 236 (2002). Rather, defendant argues that the initial search of the car at the side of the road was not done pursuant to the department's policy regarding appropriate areas to be searched during an inventory search and that the police did not have sufficient probable cause to continue the extended search of the car following the discovery of the Adderall pills. Defendant's arguments regarding discovery of the loaded handgun behind the glove box and the loaded magazine under the console must fail.

The loaded handgun was discovered after the officers had ample probable cause to believe that further contraband would likely be found in the car due to the discovery of the Adderall pills, which were tucked up behind the map light, rather than in the console or any other "ordinary" location. The handgun was properly admitted.

The additional loaded magazine was also admissible. Leaving aside the question of whether it would be admissible as evidence found pursuant to a valid initial inventory search, we find that it would be admissible even if it were not. Once Gloude discovered the pills and began searching the car, it is highly likely that he too would have discovered the loose center console, lifted it up, and inevitably found the magazine. "The inevitable discovery exception generally permits admission of tainted evidence when the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been revealed in the absence of police misconduct." *People v Stevens (After Remand)*, 460 Mich 626, 637; 597 NW2d 53 (1999). Applying the exception under the factual circumstances of this case would not provide an "incentive for police misconduct." *Id*. at 637 (citation and quotation marks omitted).[1]

Defendant next argues that the trial court erroneously gave an instruction on flight based on testimony that a witness saw three individuals fleeing from the scene of the murder, because no testimony was presented that defendant was one of those individuals. "The determination whether a jury instruction is applicable to the facts of the case lies within the sound discretion of the trial court." *People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998). The instruction being challenged is the following:

> There has been some evidence that the defendant ran away or hid after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true. And, if true, whether the evidence shows that the defendant had a guilty state of mind.

A flight instruction is appropriate when the evidence shows the defendant fled the scene or ran from the police. See *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). At trial, an eyewitness testified that he saw three people running from the scene. While the witness did not specifically state that one of those people was, in fact, defendant, this testimony, when coupled with the *additional* evidence of defendant's involvement (including his actions on the freeway), provided sufficient circumstantial evidence supporting the flight instruction.

---

[1] In a supplemental brief, defendant seems to be arguing that suppression of evidence was required because of various alleged violations of departmental policies. However, we need not address these arguments because they are not raised in the statement of questions presented for appeal in the brief. *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000). At any rate, the arguments are without merit and demonstrate no entitlement to appellate relief. For example, two officers worked on the search and one of them testified that he completed an inventory form. Defendant has set forth no persuasive authority for finding an error requiring reversal in the procedure employed.

Defendant lastly argues that the warrantless arrest for reckless driving was unreasonable because the police lacked probable cause. He notes that he was neither arraigned for nor issued a warrant, a citation, or a ticket for reckless driving. Defendant argues that, because the police lacked probable cause to arrest, the evidence found after the subsequent searches should have been suppressed as fruit of the poisonous tree. He concurrently argues that counsel provided ineffective assistance for failing to move to suppress the evidence on this ground.

> In order to effectuate a valid traffic stop, a police officer must have an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law. The reasonableness of an officer's suspicion is determined on a case-by-case basis in light of the totality of the facts and circumstances and specific reasonable inferences he is entitled to draw from the facts in light of his experience. [*People v Jones,* 260 Mich App 424, 429; 678 NW2d 627 (2004) (citations and quotation marks omitted).]

As discussed above, testimony was presented that an officer saw defendant appear to exit the freeway, but then abruptly turn back onto the freeway in front of a vehicle pulling a trailer. Under MCL 257.626(2), "a person who operates a vehicle upon a highway . . . in willful or wanton disregard for the safety of persons or property" is guilty of reckless driving which, if no injury results, is a misdemeanor. Thus, the officer was acting within his power to arrest defendant. MCL 764.15(1)(a). Defendant has not identified any authority in support of his contention that, in order for the evidence to be used, he had to have been charged with the offense for which he was initially arrested.

Nor can defendant show he was provided ineffective assistance of counsel. To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness and that the representation so prejudiced him that he was denied a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Because defendant cannot show that his arrest was unlawful, trial counsel cannot be faulted for failing to make an issue out of it. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001).

Affirmed.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter