*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DARRIUS DEMARR GREENE,

        Defendant-Appellee.

UNPUBLISHED
July 20, 2023

No. 362544
Wayne Circuit Court
LC No. 21-008671-01-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANASIA NIKOL NEAL,

        Defendant-Appellant.

No. 363880
Wayne Circuit Court
LC No. 21-007000-01-FH

---

Before: GADOLA, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

In these consolidated appeals, defendant Darrius Demarr Greene and defendant Danasia Nikol Neal both argue that their rights guaranteed by the Fourth Amendment to the United States Constitution were violated during a traffic stop. In Docket No. 362544, the prosecution appeals as of right the order dismissing the criminal charges against defendant Greene after defendant Greene's motion to suppress evidence was granted. We reverse the order in Docket No. 362544.

In Docket No. 363880, defendant Neal appeals by leave granted[1] the order denying her motion to suppress evidence. We affirm the order in Docket No. 363880.

## I. BACKGROUND

Evidence from the evidentiary hearing held on defendants' motions to suppress revealed the following events.[2] On July 22, 2021, three police officers in a fully marked police vehicle pursued a Range Rover with darkly tinted windows that had turned into a parking lot without signaling. Police were temporarily delayed entering the parking lot and engaging the Range Rover when a bicycle crossed its path. While waiting for the bicycle to pass, police activated the vehicle's lights. When pulling into the parking lot, the Range Rover was clearly visible and facing the entrance to the parking lot. The police vehicle pulled in front of the Range Rover so that the front of the two vehicles faced each other. As soon as the lights had been activated, defendant Greene exited the Range Rover and walked in the direction of an apartment building. The police vehicle parked, and all three officers exited the vehicle.

Defendant Greene was ordered to stop walking by two police officers, but he did not comply until one of the officers targeted him with a taser. Defendant Greene was then handcuffed and put into the back of the police vehicle. Meanwhile, defendant Neal, who was driving the Range Rover, was talking to the other police officer. Defendant Neal refused to answer any of the questions posed to her, including whether she had a concealed pistol license (CPL) or whether there were weapons in the vehicle. She also refused to provide her license or registration and put her hands in her purse repeatedly, despite being asked not to do so.

Although the windows were dark, the officers saw two men sitting in the back seat, holding a liquor bottle and excessively moving around. Defendant Neal refused to exit the vehicle. She briefly unlocked the doors, then made a motion indicating that she would lock them again. To prevent this from happening, one of the police officers opened the passenger door. A gun was clearly visible in the passenger door pocket. At that point, all of the occupants still in the vehicle were removed. A gun was also discovered in defendant Neal's purse. Only then did she disclose that she had a CPL.

Police officers searched the vehicle and discovered two bricks, later identified as heroin and fentanyl. Defendant Greene was charged with possession with intent to deliver heroin, 50 to 449 grams, MCL 333.7401(2)(a)(*iii*), felon in possession of a firearm, MCL 750.224f, carrying a concealed weapon, MCL 750.227, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant Neal was charged with possession with intent to deliver heroin, 50 to 449 grams, MCL 333.7401(2)(a)(*iii*), and felony-firearm, MCL 750.227b.

---

[1] *People v Danasia Nikol Neal*, unpublished order of the Court of Appeals, entered January 4, 2023 (Docket No. 363880).

[2] In her brief, defendant Neal relies upon the evidence produced at the preliminary examination, not the evidence produced at the evidentiary hearing held on the motions to suppress. We look only to the evidence produced at the evidentiary hearing since that is what the trial court relied upon for its decision.

## II. ANALYSIS

The prosecution argues that defendant Greene was properly seized as a passenger of the Range Rover and that the traffic stop began before defendant Greene exited the vehicle.

### A. STANDARDS OF REVIEW

> A court's factual findings at a suppression hearing are reviewed for clear error, but the application of the underlying law—the Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution—is reviewed de novo. [*People v Slaughter*, 489 Mich 302, 310; 803 NW2d 171 (2011).]

Clear error occurs when this Court is left with a "definite and firm conviction that the trial court made a mistake." *People v Steele*, 292 Mich App 308, 313; 806 NW2d 753 (2011).

This Court reviews a trial court's decision on a motion to dismiss for an abuse of discretion. *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005). "An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made." *Id*.

### B. DEFENDANT GREENE

We hold that defendant Greene has no standing to challenge the search or seizure. And, even if he did, he would not succeed on his Fourth Amendment challenge.

Generally, standing to challenge the constitutionality of a search exists when, considering the totality of the circumstances, "the defendant had an expectation of privacy in the object of the search and seizure" and "that expectation is one that society is prepared to recognize as reasonable." *People v Parker*, 230 Mich App 337, 340; 584 NW2d 336 (1998). "Although a passenger does not have a legitimate expectation of privacy in the searched vehicle, 'as a passenger [a defendant] may still challenge the stop and detention and argue that the evidence should be suppressed as fruits of illegal activity.' " *United States v Ellis*, 497 F3d 606, 612 (CA 6, 2007), quoting in part both *United States v Jones*, 374 F Supp2d 143, 154 (D DC, 2005) and *United States v Ameling*, 328 F 3d 443, 447 n 3 (CA 8, 2003). Consequently, "when the stop of a vehicle is legal, a passenger with no property or possessory interest in the vehicle does not have standing to contest the search of the vehicle." *People v Earl*, 297 Mich App 104, 108; 822 NW2d 271 (2012), overruled in part on other grounds by *People v White*, 501 Mich 160, 164 n 2 (2017). At no time during these proceedings has defendant Greene claimed a property or possessory interest in the vehicle. Therefore, as long as the traffic stop was legal, defendant Greene did not have standing to challenge the evidence discovered in the vehicle.

The Fourth Amendment of the United States Constitution states "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." US Const, Am IV.

> The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures. The Michigan Constitution in this

> regard is generally construed to provide the same protection as the Fourth
> Amendment of the United States Constitution. [*People v Vaughn*, __ Mich App
> __, __; __ NW2d __ (2022) (Docket No. 356400); slip op at 4 (quotation marks and
> citations omitted).]

When an individual's Fourth Amendment rights have been violated as a result of an unreasonable search and seizure, an appropriate remedy is to suppress the evidence obtained as a result of that violation. *Terry v Ohio*, 392 US 1, 12; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Traffic stops are seizures under the Fourth Amendment. *United States v Arvizu*, 534 US 266, 273; 122 S Ct 744; 151 L Ed 2d 740 (2002).

The United States Supreme Court has "long held that the touchstone of the Fourth Amendment is reasonableness" and reasonableness is determined by looking at the totality of the circumstances. *Ohio v Robinette*, 519 US 33, 39; 117 S Ct 417; 136 L Ed 2d 347 (1996) (quotation marks and citation omitted). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v United States*, 517 US 806, 810; 116 S Ct 1769; 135 L Ed 2d 89 (1996). However, police officers only need reasonable suspicion to stop a vehicle; reasonable suspicion is "a particularized and objective basis for suspecting the particular person stopped of breaking the law." *Heien v North Carolina*, 574 US 54, 60; 135 S Ct 530; 190 L Ed 2d 475 (2014) (quotation marks and citation omitted). As long as a police officer has reasonable suspicion to stop a vehicle, the subjective intentions of the police officer stopping the vehicle do not matter and have no bearing on the Fourth Amendment analysis. *Robinette*, 519 US at 38.

Here, the police officers testified that they stopped the Range Rover for turning without signaling, which is a civil infraction. MCL 257.648. When he approached defendant Neal, Detroit Police Officer Timothy Grima also stated that the Range Rover was stopped because it had tinted windows. According to MCL 257.709, a person shall not operate a motor vehicle with a reflective or nonreflective film on "the front windshield, the side windows immediately adjacent to the driver or front passenger, or the sidewings adjacent to and forward of the driver or front passenger." Therefore, the prosecution presented sufficient evidence to prove that the police officers had at least a reasonable suspicion that the driver of the vehicle was breaking the law, and the initial traffic stop was a reasonable seizure.

For this reason, defendant Greene had no standing to challenge the search of the vehicle, and because the vehicle was properly detained, his motion to suppress should have been denied. And, for the reasons set forth below, even if he had standing, his Fourth Amendment rights were not violated.

It has long been the case that officers may order drivers out of their vehicles as a matter of course, for "[w]hat is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." *Pennsylvania v Mimms*, 434 US 106, 111; 98 S Ct 330; 54 L Ed 2d 331 (1977). The Court extended this reasoning to passengers, holding that, during a traffic stop, an officer may order passengers to exit a vehicle as a matter of course. *Maryland v Wilson*, 519 US 408, 410; 117 S Ct 882; 137 L Ed 2d 41 (1997). Consequently, when a traffic stop is made, a police officer seizes everyone in the vehicle, including passengers. "The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal

-4-

activity" before seizing the passengers. *Arizona v Johnson*, 555 US 323, 327; 129 S Ct 781; 172 L Ed 2d 694 (2009).

> The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. [*Id*. at 333.]

"It is also reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety." *Brendlin v California*, 551 US 249, 258; 127 S Ct 2400; 168 L Ed 2d 132 (2007).

The authority to detain a passenger includes those passengers who seek to leave the scene of an on-going traffic stop. For one, such a conclusion fully squares with *Arizona*, where the Court solidified a police officer's authority—consistent with the Fourth Amendment—to detain a passenger for the duration of the traffic stop. *Arizona*, 555 US at 333. Second, we find the reasoning in *Aguiar v State*, 199 So 3d 920 (Fla App, 2016), a factually similar case, to be persuasive. In *Aguiar*, a vehicle being stopped by the police pulled into a parking lot, and a passenger immediately exited the vehicle and started walking away. The police ordered the passenger to return to the vehicle, which the passenger claimed violated his Fourth Amendment rights. *Id*. at 922. In rejecting this argument, the Court of Appeals held that an officer "may, as a matter of course, detain a passenger who attempts to leave the scene of a lawful traffic stop without violating the passenger's Fourth Amendment Rights." *Id*. at 921. In coming to that conclusion, the court explained that "[a] departing passenger is a distraction that divides the officer's focus and thereby increases the risk of harm to the officer." *Id*. at 925. The court also explained that, because officers may order passengers to exit a vehicle in the same manner in which they can order drivers to do so, it follows that officers have complete authority over passengers during a traffic stop. *Id*. at 923-924. Although *Aguiar* is not binding precedent, we are persuaded by its reasoning.

For these reasons, we hold that even if defendant Greene had standing, the officers legally detained defendant Greene, as he was a passenger during a traffic stop that was based upon reasonable suspicion.[3]

---

[3] Defendant relies upon *United States v Arrington*, 440 F Supp 3d 719 (ED Mich, 2020), where after a vehicle stopped at a home and parked, a passenger exited the vehicle and walked to the front door of the house. *Id*. at 723. Only after the car had parked in the driveway, and the passenger exited the vehicle, did the police pull into the driveway behind the vehicle and activate its lights, initiating the traffic stop. *Id*. The court held that because the passenger had exited the vehicle *before* the traffic stop was initiated, he was no longer a passenger and could not be seized by police. *Id*. at 725. We reject any application of *Arrington* to defendant Greene's situation. First, it seems inconsistent with *Arizona* and similar decisions to create a rule incentivizing quick flight when a passenger suspects a traffic stop is imminent. At a minimum, a safety risk is presented if an individual can exit the vehicle as soon as they see a police vehicle approaching, and stand to the side as the stop is occurring. Second, unlike in *Arrington*, the footage from the police vehicle's dash camera shows that the police vehicle pulled up to the Range Rover head-on, with its lights on and clearly intending to stop the Range Rover, before defendant Greene exited the vehicle.

## C. DEFENDANT NEAL

Defendant Neal argues that the search of the Range Rover was an illegal inventory search that violated her Fourth Amendment rights.

The trial court did not err when it denied defendant Neal's motion to suppress. As we concluded with respect to defendant Greene, police properly stopped the vehicle because of a reasonable suspicion that defendant Neal was breaking the law by failing to signal and driving a vehicle with darkly tinted windows. Additionally, defendant Neal's Fourth Amendment rights were not violated by the search of the vehicle because, contrary to her argument, the search was not an inventory search; it was a proper search under the automobile exception to the warrant requirement.

Under the automobile exception, once a vehicle has been stopped, officers may lawfully search a vehicle if they have probable cause to believe there is contraband inside the vehicle. *People v Carter*, 250 Mich App 510, 516; 655 NW2d 236 (2002). "Probable cause exists when there is a reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a cautious person to believe that the accused is guilty of the offense charged." *Id*. at 521. The automobile exception is premised on the fact that vehicles are readily mobile, creating "exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear." *Pennsylvania v Labron*, 518 US 938, 940; 116 S Ct 2485; 135 L Ed 2d 1031 (1996). It is also based on the idea that individuals have a "reduced expectation of privacy in an automobile, owing to its pervasive regulation." *Id*.

Here, the officers saw the back seat passengers holding a liquor bottle and moving around excessively in the back seat. Even though there was conflicting evidence regarding whether the liquor bottle was in fact empty, when officers first viewed the liquor bottle they had reasonable grounds for suspicion that there were open intoxicants in the car, and that there may be more liquor in the back seat.[4] Additionally, the passengers were moving around, giving the appearance of trying to hide something, and defendants Neal and Greene had both refused to comply with the police officers' orders, raising suspicion that a crime was afoot.

There were also reasonable grounds for suspicion that weapons were in the vehicle. Defendant Neal did not tell the officers that she had a CPL before officers discovered the gun in the passenger door of the vehicle. Not only did Neal fail to timely disclose her CPL, but the officer only opened the passenger door after defendant Neal had refused to unlock the door or exit the vehicle. As discussed previously, the police have the authority to order a driver or passenger to exit a vehicle during a traffic stop. *Wilson*, 519 US at 410. Once the officers saw the gun in the passenger door, they had probable cause to believe there were other guns in the vehicle.

---

[4] It is a misdemeanor to "transport or possess alcoholic liquor in a container that is open or uncapped or upon which the seal is broken within the passenger area of a moving vehicle in any place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles." MCL 257.624a(1).

Although defendant Neal had a CPL, the officers did not know this at the time they initiated the search. Defendant Neal had refused to disclose if there were weapons in the vehicle or if she had a CPL. Furthermore, the gun was found where defendant Greene was sitting, and the police had just witnessed him exit the vehicle. There is nothing in the lower court record to suggest that defendant Greene or the other two passengers had a CPL. Given the fact that defendant Neal had refused to disclose that there were weapons in the vehicle, the weapon found had been easily accessible to someone without a CPL, and there were two passengers still in the back of the vehicle who could have had weapons, the officers had probable cause to believe there were additional illegally-held weapons in the vehicle. Thus, the search of the vehicle caused no harm to defendant Neal's rights under the Fourth Amendment.

In Docket No. 362544, we reverse the order granting defendant Greene's motion to suppress and the order dismissing the charges against defendant Greene. In Docket No. 363880, we affirm the order denying defendant Neal's motion to suppress. We remand to the trial court for further proceedings, and do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado