*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MATTHEW JACK LEVANDUSKI,

Defendant-Appellant.

UNPUBLISHED
August 13, 2019

No. 341934
Livingston Circuit Court
LC No. 16-023552-FH

Before: CAVANAGH, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of possession with intent to deliver 1,000 grams or more of a controlled substance (cocaine), MCL 333.7401(2)(a)(*i*), for which he was sentenced to 11 years and four months to 25 years' imprisonment. The jury found defendant not guilty of carrying a concealed weapon, MCL 750.227(2), and carrying a firearm while committing a felony (felony-firearm), MCL 750.227b(1). We affirm.

## I. BACKGROUND

On April 27, 2004, Livingston County police officers were called to a gas station in Brighton in response to a "trouble with a customer." The gas station attendant had called the police because defendant appeared agitated and was having problems with the Western Union machine, and the attendant feared that he was going to drive away without paying for the gas he had pumped. After police arrived, defendant told them that he was having problems with the Western Union machine and was waiting for a friend to send him money so he could pay for gas. Officers walked with defendant to his car, where Magda Cano and a man named Mendez were sitting.

At trial, defendant testified that he met Cano at a party, and she offered to pay him to drive her to Chicago and back to pick up her brother because her license was suspended. According to defendant, when Cano arrived at defendant's house with the car defendant would drive, she brought Mendez with her. Defendant said that Cano directed him to Chicago, where they stopped at a restaurant to eat lunch and meet Cano's brother. While at the restaurant, Cano received a phone call, went outside to put some bags in the car, came back inside, and told

-1-

defendant and Mendez that they were ready to leave, even though Cano's brother was not there. Defendant testified that Cano told him that something had come up and her brother would not be coming with them. Knowing that he was being paid to drive regardless of who was with them, defendant got in the car and drove back to Michigan. Defendant said that during the drive, he "had a feeling that something felt off," so he pulled over and started looking around the car. When he opened the trunk, he saw a bag with the butt of a gun sticking out of it. According to defendant, he opened the bag and saw packages that appeared be drugs, and when he turned around, Cano reached past him and pulled the gun out of the bag. Defendant said that Cano told him to get back in the car, and fearing for his life, he got back in the car and continued driving.

Defendant testified that they ended up at the gas station in Brighton—even though the plan was for him to drive from Chicago to Grand Rapids—because he was following Cano's directions. Livingston County Sheriff's Deputies David Klein and Brian Chuff responded separately to the "trouble with a customer" call. Once the officers were at the car with defendant, Deputy Klein asked for Cano's and Mendez's names, and learned that Mendez had an outstanding warrant. Deputy Klein took Mendez into custody and asked Cano to step out of the car. Deputies Klein and Chuff then searched the passenger compartment. Deputy Chuff found a gun and ammunition inside a woman's purse on the floor in the backseat, where Cano had been sitting. Deputy Klein found a notebook, a calculator, and five cell phones. On defendant's person, Deputy Klein found $225 in cash and a $400 Western Union receipt. The deputies also searched the trunk, where Deputy Klein found two bricks of cocaine inside a woman's purse, which was inside another bag filled with clothing. At that point, the deputies curtailed the search until a police dog could be brought in. The deputies took the car to the Sheriff's Department where a police dog signaled the presence of drugs on the left side of the trunk. There, Deputy Klein found a third brick of cocaine inside a box of protein powder. The cocaine contained markings that, combined with the amount discovered, were consistent with sale or distribution.

A DEA task force then took over the investigation. Defendant provided a written statement claiming that the gun and cocaine were not his although he had touched them, and that he had stopped at the Western Union to pick up gas money. Defendant testified that he told the DEA agents that Cano had threatened him with a gun but they had not believed him. The DEA task force determined that the quantity of cocaine and the presence of a firearm merited a federal investigation, but they released the three suspects in hopes of learning about the source of the cocaine, which totaled nearly three kilograms. Defendant moved to Florida one month later.

A. PRETRIAL PROCEEDINGS AND TRIAL

In July 2004—three months after the events described above—the Livingston County prosecutor filed a warrant and felony complaint charging defendant with (1) delivery or manufacture of 1,000 or more grams of a controlled substance (cocaine), MCL 333.7401(2)(a)(*i*), (2) carrying a concealed pistol in a vehicle, MCL 750.227(2), and (3) felony-firearm, MCL 750.227b(1). The warrant authorized nationwide extradition. In January 2007, defendant's trial counsel, Jeffrey Kortes, entered his appearance on defendant's behalf. Defendant did not return to Michigan until April 2016 when he was arrested for an unrelated offense in Florida. Defendant waived extradition and arraignment. Trial in Michigan was adjourned for various reasons, including ongoing plea negotiations, the examination of potentially exculpatory evidence, docket congestion, and defendant's request for prosecutorial assistance in locating

Cano and Mendez to testify as witnesses in his defense. Because of the delays, defendant was not tried until June 2017.

On the first day of trial, the prosecution placed on the record a plea offer of "five plus two," meaning a minimum of five years for the principal count of possession with intent to deliver (which carried a minimum guidelines range of 11 to 18 years) plus the mandatory consecutive two-year term for felony-firearm. Defense counsel rejected the plea, and defendant confirmed on the record his decision to reject the plea.

During closing arguments, the prosecution argued that defendant's claims about transporting the cocaine only out of fear were not credible because (1) he had not told police officers at the gas station about Cano's implied threat with the gun, and (2) the evidence showed that defendant knew the cocaine was in the car, that he had possession of the cocaine, and that he agreed to transport cocaine for payment. Defense counsel countered that defendant was not in possession of the gun or the cocaine because he did not have a right to control them. After the jury asked for clarification about the meaning of possession, it found defendant guilty of possession of cocaine with intent to deliver but not guilty of the two gun-related charges.

## B. REMAND FOR AN EVIDENTIARY HEARING

After defendant filed a claim of appeal in this Court, he filed a motion for remand, requesting an evidentiary hearing on claims of ineffective assistance of counsel related to trial counsel's failure to (1) raise a speedy-trial claim, (2) request a jury instruction for the defense of duress, (3) challenge the validity of the search of the trunk of the car that revealed the cocaine, and (4) follow up on the prosecution's efforts to locate Cano and Mendez. This Court granted the motion to remand, and defendant filed a motion for an evidentiary hearing in the trial court raising the same four claims.

At the hearing, trial counsel Kortes testified that he was first hired in December 2006 to inquire into a warrant, and that he filed his appearance in January 2007 but heard nothing further from the trial court, the prosecutor's office, or the Sheriff's Department. Defendant testified that after moving to Florida one month after the arrest in April 2004, he did not know about a warrant, but he admitted that he hired Kortes for the purpose of looking into whether there was a warrant. Defendant heard nothing more. During the time he lived in Florida, defendant started three businesses (one of them bearing his name), and he was involved in two custody cases, one in Florida and one in Kent County, Michigan. During the Florida custody case, defendant was told that the warrant on the 2004 charges was not extraditable and was considered inactive. When defendant was arrested in Florida in April 2016 in an unrelated matter, police officers learned about the Michigan warrant. Defendant agreed to waive extradition and return to Michigan to answer the charges. Kortes resumed his participation in the case in 2016, but never asserted a violation of defendant's right to a speedy trial.

Kortes described his trial strategy as a challenge to whether defendant possessed the gun and the cocaine, which would have been inconsistent with a duress defense because such a defense required defendant to concede possession. Kortes described his failure to request a jury instruction on the duress defense as an oversight, but he added that he thought it unlikely jurors would believe defendant's testimony that he was only acting out of fear. Kortes also testified

-3-

that he did not challenge the validity of the search of the trunk because he believed such a motion would be frivolous because his understanding of the caselaw in effect in 2004 allowed the police to search the entire vehicle during a search incident to arrest.

After listening to the evidence, the trial court rejected all of defendant's claims on remand. The trial court rejected the speedy-trial claim because the delay was the direct result of defendant's leaving the state of Michigan. The trial court also rejected the ineffective assistance of counsel claims. The trial court first found that trial counsel was not ineffective for failing to raise a duress defense when that aspect of defendant's claim was not credible in light of defendant's failure to tell police officers at the gas station about his fear. The trial court further concluded that trial counsel was not ineffective for failing to challenge the search of the trunk because that search was lawful when it was conducted. It also reasoned that the items in the trunk would have been found during an inventory search, and the police dog would have discovered the drugs. The trial court further found that the prosecution exercised due diligence in response to defendant's request for assistance in locating Cano and Mendez. The trial court also noted that trial counsel's strategy in challenging the possession element was partially successful. Therefore, the trial court declined to grant further relief on remand.

## II. DISCUSSION

## A. SPEEDY-TRIAL CLAIM

Defendant argues that his right to a speedy trial was violated by the 12-year delay from his 2004 arrest to the prosecution's enforcement of the charges in 2016. We review this unpreserved issue for plain error affecting substantial rights.[1] *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999). To demonstrate plain error, a defendant "must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant." *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006).

"Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *People v Waclawski*, 286 Mich App 634, 665; 780 NW2d 321 (2009); US Const, Am VI; Const 1963, art 1, § 20. "In order to determine whether a

---

[1] We reject the prosecution's argument that plaintiff waived this claim by agreeing to a trial date. "[W]aiver is the intentional relinquishment or abandonment of a known right." *People v Gonzalez-Raymundo*, 308 Mich App 175, 187; 862 NW2d 657 (2014) (quotation marks and citation omitted). "Waiver consists of (1) specific knowledge of the constitutional right and (2) an intentional decision to abandon the protection of the constitutional right." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). Agreeing to a trial date in the absence of "evidence that [the] defendant specifically considered and purposely waived his right to a speedy trial" does not constitute a waiver of a defendant's right to a speedy trial. *Id*. Rather, a defendant's agreement to a trial date is relevant to the substantive analysis of a speedy-trial claim. *Id*. We therefore refuse the prosecution's invitation to infer waiver from events that bear on the substantive analysis of the speedy-trial claim.

defendant has been denied his right to a speedy trial, this Court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) any prejudice to the defendant." *People v Wickham*, 200 Mich App 106, 109; 503 NW2d 701 (1993). A speedy-trial violation requires dismissal of the charges with prejudice. *Waclawski*, 286 Mich App at 664-665.

## 1. LENGTH OF DELAY

Defendant contends that the delay was 12-years, beginning with his arrest in April 2004 and ending when the prosecution began in 2016. Yet when defendant was arrested and released in April 2004, there were no charges pending. The warrant and felony complaint were not issued until July 2004. As explained by the United States Supreme Court, "Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, or a claim under any applicable statutes of limitations, *no Sixth Amendment right to a speedy trial arises until charges are pending*." *United States v MacDonald*, 456 US 1, 7; 102 S Ct 1497; 71 L Ed 2d 696 (1982) (emphasis added; citation omitted).[2] Because there were no charges pending against defendant when he was arrested in April 2004, the speedy-trial issue could not arise at that time.

"The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). Defendant was arrested and extradited to Michigan in spring of 2016. Because the charges against defendant were pending at that time, the length of the delay is measured from this arrest and extradition[3]—not the April 2004 arrest when no charges were pending. See *People v Patton*, 285 Mich App 229, 236; 775 NW2d 610 (2009) (explaining that "the time frame relied on by defendant preceded his arrest on November 6, 2006," so "the 3 ½-year period that defendant uses to claim a speedy trial violation is not recognized as a period during which a speedy trial violation occurs"). Therefore, only 14 months lapsed after defendant's right to a speedy trial attached.

---

[2] In *United States v Marion*, 404 US 307, 313; 92 S Ct 455; 30 L Ed 2d 468 (1971), the United States Supreme Court elaborated:

> On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time. The amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him.

[3] In *People v Patton*, 285 Mich App 229, 231, 236; 775 NW2d 610 (2009), this Court held that a federal inmate's right to a speedy trial did not attach until he was transferred to the custody of Michigan authorities.

A delay of fewer than 18 months requires the defendant to demonstrate prejudice, while a delay exceeding 18 months is presumptively prejudicial, shifting the burden of rebutting the presumption to the prosecution. *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999). The 14-month delay between the arrest in April 2016 and trial in June 2017 was not presumptively prejudicial, and this factor does not favor defendant.[4]

## 2. REASON FOR DELAY

"In assessing the reasons for delay, this Court must examine whether each period of delay is attributable to the defendant or the prosecution." *Waclawski*, 286 Mich App at 666. Delays resulting from a request for an adjournment by a defendant are attributable to the defendant. *Cain*, 238 Mich App at 113. Unexplained delays or otherwise unattributed trial-court delays are charged to the prosecution. *People v Lown*, 488 Mich 242, 262; 794 NW2d 9 (2011). Docket congestion only "minimally weighs against the prosecution." *Cain*, 238 Mich App at 113.

After defendant waived arraignment on May 18, 2016, a June 17, 2016 pretrial statement referred to "ongoing discussions," and a settlement conference was scheduled for July 22, 2016. Although the substance of the ongoing discussions was not described, the scheduling of a settlement conference notes defendant's agreement to the discussions. Defendant then agreed to adjournments from July 22, 2016 through October 11, 2016. This 146-day period is attributable to both parties.

Trial was later adjourned from January 23, 2017 to March 20, 2017 for examination of potentially exculpatory material, and from March 20, 2017 to May 15, 2017 for the prosecution to assist defendant in locating Cano and Mendez. This 114-day period is attributable to defendant.

Thus, of the 386 days between defendant's arrest and trial, 260 days are either attributable to defendant or to both parties. Because defendant asked for or agreed to two-thirds of the adjournments, this factor does not favor him.

## 3. ASSERTION OF THE RIGHT TO A SPEEDY TRIAL

This factor does not favor defendant because he did not assert the right to a speedy trial until this appeal. See *People v Metzler*, 193 Mich App 541, 546; 484 NW2d 695 (1992)

---

[4] To the extent that defendant's brief can be construed as raising a due process challenge to the 12-year pre-arrest delay, defendant has to establish that he was substantially prejudiced by the delay. See *Patton*, 285 Mich App at 236-237. Defendant argues that he was prejudiced because, due to the long delay, Cano and Mendez were unable to be located, even with assistance from the prosecution, and they were "potentially exculpatory witnesses." Yet defendant has presented no evidence that Cano and/or Mendez would have offered favorable testimony or otherwise supported his defense. This is particularly troublesome given that Cano and Mendez gave statements to the DEA that were inculpatory to defendant, with Cano in particular implicating that the gun found in the car was defendant's.

(explaining that a defendant's failure to assert the right to a speedy trial in a timely manner weighs against the defendant).

## 4. PREJUDICE TO DEFENDANT

Defendant argues that he was prejudiced by the loss of Cano and Mendez as defense witnesses and their potentially exculpatory testimony. Prejudice can flow "to the person" or "to the defense." *Wickham*, 200 Mich App at 112. "In considering the prejudice to the defendant, the most serious inquiry is whether the delay has impaired the defendant's defense." *Simpson*, 207 Mich App at 564. A defendant who has not described how witness testimony "would have aided in his defense" has not shown prejudice. *Id*.

Defendant was found not guilty of the gun charges, showing that the jury accepted defendant's argument that the gun was in Cano's possession, not his. Thus, any extent that Cano's or Mendez's testimony would have aided the defense in this respect—if at all—clearly did not prejudice defendant. Turning to defendant's conviction for possession with intent to deliver cocaine, defendant does not describe what Cano and Mendez would have testified to that would have aided his defense to this charge. There is no suggestion that Cano and Mendez would have testified in a self-incriminating manner and accepted responsibility for the things that defendant blamed them for. Without any hint that Cano and/or Mendez would have testified favorably in a way that aided the defense, defendant has not shown that the delay was prejudicial to or otherwise impeded his defense.

For these reasons, we conclude that none of the speedy-trial factors favor defendant, so we reject defendant's speedy-trial claim.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

"Whether the defendant received the effective assistance of counsel guaranteed him under the United States and Michigan Constitutions is a mixed question of fact and law." *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). When examining a defendant's claim of ineffective assistance of counsel, "this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Dixon-Bey*, 321 Mich App 490, 515; 909 NW2d 458 (2017).

"In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Effective assistance is "strongly presumed," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), and the defendant bears the burden of proving otherwise, *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989). Counsel's performance cannot be judged with the "benefit of hindsight." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

## 1. RIGHT TO A SPEEDY TRIAL

Defendant argues that trial counsel was ineffective for failing to raise the speedy-trial violation. Because defendant's speedy-trial claim has no merit, trial counsel was not ineffective for failing to argue a speedy-trial violation. See *People v Knapp*, 244 Mich App 361, 386; 624 NW2d 227 (2001) (explaining that defense counsel is not required to make frivolous or meritless motions or objections).

## 2. DURESS JURY INSTRUCTION

Defendant next argues that defense counsel was ineffective for not requesting a jury instruction for the defense of duress. Trial counsel has wide discretion regarding trial strategy "because counsel may be required to take calculated risks to win a case." *Heft*, 299 Mich App at 83. A court cannot substitute its judgment for that of trial counsel concerning matters of trial strategy. *Payne*, 285 Mich App at 190. There is a strong presumption that trial counsel's performance was strategic, *Unger*, 278 Mich App at 242, and defendant bears the burden of overcoming this presumption, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). The fact that a trial strategy fails does not mean that its use constitutes ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). But the strategy must, in fact, be sound; a court must not insulate the review of counsel's performance by calling it trial strategy. *People v Douglas*, 496 Mich 557, 585; 852 NW2d 587 (2014).

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). The following are the elements of a duress defense:

> A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;
>
> B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;
>
> C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and
>
> D) The defendant committed the act to avoid the threatened harm. [*People v Lemons*, 454 Mich 234, 247; 562 NW2d 447 (1997).]

The threat must have arisen "without the negligence or fault of the person claiming the defense." *Chapo*, 283 Mich App at 371-372. A defendant forfeits the defense of duress when he could have escaped or stopped the offending behavior without the threat of death or serious bodily harm. *Lemons*, 454 Mich at 247 n 18. The duress jury instruction, M Crim JI 7.6, echoes the elements of the duress defense and instructs the jury how to consider the elements.

Defendant argues that trial counsel was ineffective for failing to request a jury instruction on the defense of duress because defendant testified that Cano and her gun and Mendez and his baseball bat made defendant fear for his life. At the evidentiary hearing on remand, defendant's trial counsel, Kortes, testified that his strategy at trial was to argue that defendant did not in fact

-8-

possess the gun or the cocaine. During questioning, Kortes acknowledged that defendant would have to admit to the possession element to claim duress, and that Kortes chose instead to "focus[] on the lack of possession."

We conclude that defense counsel's decision to not request the duress instruction, despite that he arguably could have, did not fall below an objective standard of reasonableness because it was sound trial strategy. Kortes made clear both during trial and at the evidentiary hearing that his strategy was to establish that defendant never possessed the cocaine or gun. The jury was acutely aware of this strategy, as they asked numerous questions related to the possession element, and the trial court ultimately had to give them a clarifying instruction about the difference between carrying and possession. It also bears noting that this strategy was partially successful; the jury acquitted defendant of the gun-related charges, apparently accepting the argument that he never possessed the gun. Though it would not have been improper for Kortes to argue alternative legal theories—essentially, "defendant did not possess the gun and cocaine, but even if he did, it was under duress"—it was not unreasonable trial strategy for Kortes to choose to not present these competing theories. Presenting the competing theories could have potentially confused the jurors. It also ran the risk of placing in the jurors' minds that defense counsel believed that the evidence could be sufficient to establish that defendant did in fact possess the cocaine and gun. In contrast, by not making an argument for duress, defense could repeatedly drive home the singular point that defendant did not possess the gun or cocaine. For these reasons, we conclude that defendant has not overcome the strong presumption that defense counsel's decision to not request an instruction for a duress defense was sound trial strategy. *Horn*, 279 Mich App at 39. We will not substitute our judgment for that of defense counsel on matters of trial strategy. *Payne*, 285 Mich App at 190.[5]

### 3. VALIDITY OF THE SEARCH OF THE TRUNK

Defendant argues that trial counsel was ineffective for failing to challenge the validity of the search of the trunk, where all of the cocaine was found, because that search was an unlawful search incident to arrest even in 2004 before the issuance of *Arizona v Gant*, 556 US 332; 129 S Ct 1710; 173 L Ed 2d 485 (2009). Defendant's argument is flawed because the search-incident-to-arrest exception is not the proper basis for evaluating the search of the *trunk*.

The United States Constitution and Michigan Constitution generally prohibit warrantless searches. *People v Slaughter*, 489 Mich 302, 310-311; 803 NW2d 171 (2011). Several exceptions to the warrant requirement justify searches, including a search incident to lawful arrest and an automobile search, but they "still require[] reasonableness and probable cause." *In re Forfeiture of $176,598*, 443 Mich 261, 266; 505 NW2d 201 (1993). "Probable cause exists when there is a reasonable ground of suspicion supported by circumstances sufficiently strong to

---

[5] We are mindful of Kortes's statement at the evidentiary hearing that his decision to not request the instruction "was an oversight," but he prefaced that statement with "looking back now, you know, hindsight being 20/20[.]" At any rate, even if Kortes would have requested the instruction in "hindsight," that he did not request the instruction did not rise to an objectively unreasonable performance for the reasons explained above.

warrant a cautious person to believe that the accused is guilty of the offense charged." *People v Carter*, 250 Mich App 510, 521; 655 NW2d 236 (2002).

*Gant* dealt with the proper scope of the search of the *passenger compartment* under the search-incident-to-arrest exception, and narrowed the scope of such searches to only serving the policies of officer safety and preservation of evidence underlying the exception. *Gant*, 556 US at 343. Thus, *Gant* and its predecessors do not address the question raised here: the search of the *trunk*.[6]

Defendant is correct that even before *Gant*, the scope of a search incident to the arrest of an occupant of a vehicle covered only the passenger compartment, not the trunk, as this Court concluded in *People v Sinistaj*, 184 Mich App 191, 199; 457 NW2d 36 (1990). Nonetheless, the search of the trunk in *Sinistaj*, 184 Mich App at 199-201, was permissible under the automobile exception once the officer had probable cause to believe that the entire automobile, including the trunk, contained evidence of criminal activity. In *Sinistaj*, 184 Mich App at 200, during the search of the defendant and the passenger compartment of the vehicle incident to the defendant's arrest, police officers discovered "a telephone pager, a small vial of cocaine with attached silver spoon, and over $2,700 in cash on [the defendant's] person," providing probable cause to search the vehicle, including the trunk. Consequently, defendant's framing of the issue in this case as the proper scope of a search incident to arrest is a red herring that distracts from the question whether the search of the trunk was permissible under the automobile exception.

The automobile exception is premised on the reduced expectation of privacy in an automobile and the mobility of automobiles. *Carter*, 250 Mich App at 515-517. Probable cause "justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *People v Carter*, 194 Mich App 58, 61; 486 NW2d 93 (1992) (quotation marks and citation omitted). In *Carter*, 194 Mich App at 60, 62-63, this Court concluded that the presence of a pager and a notebook with an unexplained "list of names, locations, and numbers" did not provide the requisite probable cause to search the trunk, where a digital scale and prepackaged cocaine was discovered. In contrast, in this case, the vehicle contained additional indications of drug trafficking beyond a pager and a notebook. When Deputies Klein and Chuff searched the passenger compartment incident to the arrest of Mendez, Deputy Chuff discovered the gun and ammunition in the purse on the floor in the backseat. Deputy Klein found $225 in cash on defendant's person, a Western Union receipt for $400, a notebook, a calculator, and five cell phones. Deputy Klein also noted "the differing stories from the people in the car." Taken together, the gun, the money, the notebook, the calculator, the number of cell phones exceeding

---

[6] This Court, pre-*Gant*, upheld the validity of the search of the passenger compartment of a vehicle incident to the arrest of the driver on outstanding warrants for domestic violence and unpaid child support. *People v Davis*, 250 Mich App 357, 360, 365; 649 NW2d 94 (2002). Applying this pre-*Gant* interpretation, Deputy Klein's arrest of Mendez on an outstanding warrant for an unspecified charge justified the search of the passenger compartment of the vehicle.

the number of passengers, and the varying explanations from the vehicle's occupants provided probable cause for a search of the trunk under the automobile exception.

In sum, defendant's focus on the limited scope of a search incident to arrest fails to address other justifications for searching the trunk. Because officers discovered several indicators of drug trafficking in the passenger compartment during the lawful component of the search incident to Mendez's arrest, they had probable cause to suspect the presence of contraband in the trunk, and the search of the trunk was lawful under the automobile exception. Trial counsel was not ineffective for failing to challenge the validity of the search and the admissibility of the cocaine found in the trunk.[7] See *Knapp*, 244 Mich App at 386.

## C. DEFENDANT'S STANDARD 4 BRIEF

### 1. EXTRANEOUS EVIDENCE

Defendant argues that the prosecution's invitation for the jury to conduct a handwriting analysis "introduced new evidence" that violated defendant's "constitutional rights to confrontation, cross-examination, and assistance of counsel," and that the prosecution should have brought in a handwriting expert to support the prosecution's handwriting comparison instead of stating its own opinion about defendant's handwriting. We disagree. We review this unpreserved issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 764-765.

"During their deliberations, jurors may only consider the evidence that is presented to them in open court. Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997) (citation omitted). "Misconduct can be demonstrated with evidence pertaining to outside or extraneous influences, but cannot be demonstrated with evidence indicating matters that inhere in the verdict, such as juror thought processes and interjuror inducements." *People v Messenger*, 221 Mich App 171, 175; 561 NW2d 463 (1997). For example, a jury's reenactment of a shooting did not reflect a consideration of extraneous matters when the reenactment was based "exclusively on the testimony elicited during the trial." *People v Fletcher*, 260 Mich App 531, 542; 679 NW2d 127 (2004).

The prosecution's invitation for the jury to compare the handwriting from defendant's written statement to the DEA and the notebook found in the car was based solely on evidence produced at trial. Deputy Klein testified about finding the notebook in the car, and it was

---

[7] Defendant has provided no factual basis for his argument that trial counsel was ineffective in his response to the prosecution's inability to locate Cano and Mendez for their production as witnesses, and defendant has not established prejudice resulting from their nonappearance, as discussed in our rejection of defendant's speedy-trial claim in Part II.A.4. Therefore, defendant has not established that trial counsel was ineffective on this ground.

introduced into evidence as an exhibit. Another officer testified that defendant made a written statement, which was also admitted into evidence. In closing, the prosecutor compared the handwriting in the notebook with defendant's statement to the DEA in response to defendant's argument that he was not voluntarily involved in transporting cocaine for distribution. The jury requested both exhibits, and the trial court allowed the jury to view them. The jury did not view extraneous evidence when it reviewed exhibits admitted into evidence. Further, the jury's deliberation process, which was based on properly admitted evidence, is not subject to attack. Consequently, we reject defendant's request for a new trial or an evidentiary hearing to examine the jury panel regarding the role of the handwriting comparison in reaching its verdict.

## 2. ADVICE REGARDING PLEA OFFER

Defendant argues that trial counsel was ineffective for improperly advising him of the consequences of accepting or rejecting a plea, resulting in a sentence more than double the shortest plea offered for the controlled substances charge. Defendant asks this Court to remand the case for "enforcement of the five[-]year plea offer" or for an evidentiary hearing regarding this claim. We disagree, and we decline defendant's request for a remand. Review of an unpreserved ineffective assistance of counsel claim is limited to review of errors apparent on the record. *Sabin*, 242 Mich App at 658-659.

Prejudice can result from an attorney's advice to reject a guilty plea, even if the subsequent trial is constitutionally flawless. *Lafler v Cooper*, 566 US 156, 163-164; 132 S Ct 1376; 182 L Ed 2d 398 (2012). In *Lafler*, 566 US at 163, the parties conceded that defense counsel's advice to the defendant to reject the plea offer "because he could not be convicted at trial" was bad advice. Defendant here asserts that defense counsel advised him that the sentencing guidelines did not apply, that "the trial judge indicated he would impose a three year sentence if convicted by the jury," and that trial counsel "assured [defendant] 'in all probability' [he] would be acquitted."

"The ultimate decision to plead guilty is the defendant's, and a lawyer must abide by that decision." *People v Effinger*, 212 Mich App 67, 71; 536 NW2d 809 (1995). Defendant stated on the record at the beginning of trial his decision to reject the seven-year plea deal (five years for the narcotics charge plus two years for felony-firearm). Kortes testified at the evidentiary hearing that defendant made the decision to reject the plea offer because he wanted to go to trial. Defendant has provided no support for his claim that the trial court indicated that it would sentence defendant to three years in the event of a conviction. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) ("[T]he defendant necessarily bears the burden of establishing the factual predicate for his claim."). In addition, defendant testified at the evidentiary hearing that Kortes said he could get a three-year plea deal, not that the trial court assured defendant of a three-year sentence. Any suggestion that Kortes promised defendant a three-year plea deal is inconsistent with the prosecution's placement of the seven-year plea offer on the record before trial.

Lastly, defendant's assertion about defense counsel's prediction of the likelihood of conviction differs significantly from defense counsel's advice in *Lafler*, 566 US at 163, that the defendant "could not be convicted . . . ." Further, the jury in this case found defendant not guilty of the two charges related to possession of the gun after asking questions about the definition of

possession.  Accordingly, defense counsel's optimistic prediction was based in a reasonable understanding of the facts.

In sum, defendant is essentially arguing that he would have accepted a guilty plea if he knew that he would be convicted and sentenced as he was, but this regret is not the proper basis for an ineffective assistance of counsel claim.  Therefore, we reject defendant's request for a remand for the prosecution to renew the final plea offer or for an evidentiary hearing on defendant's ineffective assistance of counsel claim related to the plea negotiations.

We affirm.


/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien